**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ANGIE CALLWOOD et al.,

                **Plaintiffs,**

      **v.**

CITY OF KINGSTON et al.,

                **Defendants.**

_____

                        **1:15-cv-1298**
                        **(GLS/TWD)**

**APPEARANCES:**

**OF COUNSEL:**

**FOR THE PLAINTIFFS:**
5185 MacArthur Boulevard, NW
Suite 611
Washington, DC 20016

JOHNATHON HARDAWAY,
ESQ.

Bergstein & Ulrich, LLP
5 Paradies Lane
New Paltz, NY 12561

STEPHEN BERGSTEIN, ESQ.

**FOR THE DEFENDANTS:**
_City of Kingston, Michael Mills,_
_Robert Farrell, Timothy Bowers,_
_Richard Negron, Kirk Strand,_
_and Emily-Claire E. Sommer_
 Cook, Netter Law Firm
 P.O. Box 3939
 85 Main Street
 Kingston, NY 12402

    ROBERT D. COOK, ESQ.

 _County of Ulster, Michael Iapoce,_
 _Barbara Sorkin, Pamela Joern,_
 _James Meyer, Denise Timbrouck,_
 _Amy Greene, Peggy Webb,_

*Holley Carnright,*
*Elizabeth Culmone-Mills,*
*and Tamatha Stitt*
Maynard, O'Connor Law Firm          ADAM T. MANDELL, ESQ.
P.O. Box 180                        MICHAEL E. CATALINOTTO,
Route 9W                            JR., ESQ.
Saugerties, NY 12477

**Gary L. Sharpe**
**Senior District Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I. <u>Introduction</u>

Plaintiffs Angie Callwood and Johnathon Hardaway, on behalf of

themselves and their minor children, A.H and J.H., commenced this

action—and then filed an amended complaint—against defendants City of

Kingston (City), Michael Mills, Robert Farrell, Timothy Bowers, Richard

Negron, Kirk Strand, Emily-Claire Sommer (collectively, "City

defendants"), as well as Ulster County (County), Michael Iapoce, Barbara

Sorkin, Pamela Joern, James Meyer, Denise Timbrouck, Amy Greene,

Peggy Webb, Holley Carnright, Elizabeth Culmone-Mills, and Tamatha

Stitt[1] (collectively, "County defendants") pursuant to 42 U.S.C. § 1983 and

New York common law.  (Am. Compl., Dkt. No. 4.)  Pending is the County

---

[1] Other than the City and County, each of the defendants was sued in his or her official
and individual capacity.

2

defendants' motion to dismiss, (Dkt. No. 20), which seeks to dismiss certain claims of the amended complaint as well as a cross-claim filed by the City defendants, (Dkt. No. 16 at 5). For the reasons that follow, the County defendants' motion is granted in part and denied in part.

## II. **Background**

### A.   **Facts**[2]

At the outset, the court notes that it refers to the City defendants only in general terms because plaintiffs' claims against them are not the subject of the pending motion, which was filed by the County defendants. (Dkt. No. 20.) Nonetheless, some allegations regarding the City defendants are included for relevant context.

#### 1.   *Events of February 8, 2014*

Hardaway, Callwood, and their children, A.H. and J.H., are Florida residents. (Am. Compl. ¶ 7.) Callwood was the director of admissions and financial aid for Barrytown College, a Unificationist college. (*Id.* ¶¶ 15, 92.) Although she primarily worked offsite, she attended bi-monthly work meetings near the college in Annandale-on-Hudson, New York. (*Id.*

---

[2] The facts are drawn from plaintiffs' amended complaint and presented in the light most favorable to them.

¶ 15.)  Hardaway is an attorney and a sports agent.  (*Id.* ¶ 77.)  Hardaway and Callwood are African-American, and Callwood is a Unificationist.  (*Id.* ¶¶ 92, 105.)

On February 8, 2014, Hardaway and family stayed at a Super 8 Hotel in Kingston, New York while Callwood attended meetings.  (*Id.* ¶ 15.)  At about 5:20 P.M. that day, Hardaway and Callwood left the hotel to pick up groceries and allowed A.H., then twelve years old, to babysit J.H., then four years old.  (*Id.* ¶ 16.)  Hardaway and Callwood were gone less than two hours and left a cell phone for A.H. with pre-programmed contacts, including their own.  (*Id.* ¶¶ 16, 18.)

Shortly after Hardaway and Callwood left the hotel, two Kingston Police Department (KPD) officers arrived at the hotel, "purportedly in response to a complaint that noise was coming from plaintiffs' room earlier that afternoon."  (*Id.* ¶ 19.)  The officers knocked on plaintiffs' hotel room door, and, after A.H. responded but did not open the door, the officers entered with a key card obtained from the hotel's staff.  (*Id.* ¶¶ 20-21.)  A.H. asked them to leave several times and "told them her age, that she was allowed to babysit, that her father was an attorney, and that their actions were unconstitutional."  (*Id.* ¶ 23.)  Ignoring A.H.'s requests, the

officers confiscated her cell phone, interrogated her, and searched and "ransacked" the room.  (*Id.* ¶ 24.)  The officers called a private ambulatory care company, and paramedics arrived and performed a medical examination of A.H. and J.H.  (*Id.* ¶¶ 25-26.)  "[T]he children were healthy; had normal, regular, and strong vital signs; were alert and conscious; and did not appear to be in any pain or distress."  (*Id.* ¶ 26.)  A.H. asked the officers to allow her and J.H. to stay in the hotel room, but the officers ordered the paramedics to take the children to a hospital for a second medical examination.  (*Id.* ¶¶ 27-28).

At the hospital, A.H. repeatedly asked to return to the hotel, but a KPD officer told the children that they had to remain.  (*Id.* ¶ 29.)  A second medical examination indicated that the children "were alert, awake, conversant, in no distress, at healthy weights, and appeared healthy and well groomed."  (*Id.* ¶ 30.)  A KPD officer called the New York State Office of Children and Family Services (NYOCFS) Central Register of Child Abuse and Maltreatment (hereinafter, "Central Register") and "fabricated a phony basis for their removal," including stating A.H. was only ten years old and that J.H. needed immediate medical care because he had a seizure.  (*Id.* ¶¶ 31-33.)  Meyer, an Ulster County Department of Social

Services (DSS) caseworker, called a KPD officer who told him that KPD officers were waiting at the hotel for Hardaway and Callwood, "'a large black man + girlfriend'" who were driving a car not registered to them, and that KPD did not have their names or contact information.[3]  (*Id.* ¶¶ 11, 34.) Meyer then called Timbrouck, a DSS caseworker and Meyer's supervisor, and relayed to her the KPD officer's comments and the Central Register allegations.  (*Id.* ¶¶ 11, 35.)  Timbrouck then "ordered . . . Meyer to ratify the removal of the children . . . and to place [them] into foster care."  (*Id.* ¶ 35.)

Meyer went to plaintiffs' hotel room and entered with two KPD officers, who used a key card to enter.  (*Id.* ¶¶ 37-38.)  Meyer took photographs of the room and then went to the hospital.  (*Id.* ¶ 39.)  He left a notice on the hotel room door regarding the removal of the children, but he did not leave contact information, as required by New York state law.[4] (*Id.* ¶ 118.)  At the hospital, "Meyer took A.H. into a . . . room and closed the door to interview her."  (*Id.* ¶ 41.)  A.H. told Meyer what happened

_____

[3] Plaintiffs allege that the KPD officer lied about not having Hardaway's and Callwood's names or contact information, and that "no evidence whatsoever has ever been produced that the license plate or car belonged to or was registered to anyone other than . . . Hardaway." (Am. Compl. ¶ 34.)

[4] *See* N.Y. Fam. Ct. Act § 1024(b)(iii).

earlier in the hotel room, and he ignored several of her requests to call Hardaway and Callwood.  (*Id.*)  The hospital discharged A.H. and J.H. into Meyer's custody, and he placed them in a foster care facility.  (*Id.* ¶ 42.) Hardaway and Callwood returned to the hotel to find their children gone; no phone calls were made to them while they were away.  (*Id.* ¶ 43.)

    2.    *Section 1028 Application to Return Hearing*

On February 10, 2014, Hardaway and Callwood filed an application to return their children,[5] and a four-day hearing was held in Family Court on February 10, 11, 13, and 14.  (*Id.* ¶ 44.)   Hardaway represented himself during the hearing, and Joern, a DSS attorney, represented DSS. (*Id.* ¶¶ 45-46.)  According to the amended complaint, Meyer testified at the hearing that the County's policy "is not to investigate the countless children twelve years old and younger that live in the County . . . and . . . [the City that are] permitted to walk home and stay at home alone unattended . . . each school day . . . for undetermined lengths of time." (*Id.* ¶ 48.)  Meyer also "manufactured evidence" and "suppressed exculpatory evidence" during the hearing.  (*Id.* ¶ 49.)  At the hearing on February 13, Culmone-Mills, an Ulster County assistant District Attorney,

---

[5] *See* N.Y. Fam. Ct. Act § 1028.

"made recommendations to [a KPD officer] as to how he should answer questions during cross-examination," "discussed fact patterns in case law involving child removals" with him, and discussed her impressions of hearing testimony with Joern and KPD officers. (*Id.* ¶¶ 12, 100.) On February 14, Family Court ordered that A.H. and J.H. be immediately returned to Hardaway and Callwood. (*Id.* ¶ 52.)

*3.    February 13, 2014 Arrest of Hardaway and Callwood*

Before the application to return hearing on February 13, Stitt, an Ulster County District Attorney's Office (UCDAO) investigator, Culmone-Mills, Greene (a DSS caseworker), Meyer, and "other defendants" met. (*Id.* ¶¶ 11, 12, 73.) Stitt claimed that Hardaway "had two telephone numbers, one being used by an escort service and one a pornographic web site," and said that Hardaway and Callwood would be arrested for child endangerment. (*Id.* ¶ 73.) At that day's hearing, Stitt testified falsely as to her investigation into Hardaway and afterward "continued to manufacture evidence, hide exculpatory evidence, and falsely assert [Hardaway and Callwood] were involved in illicit businesses." (*Id.* ¶¶ 74-90, 91.)

The same day, a KPD officer "swore out" a criminal complaint

against Hardaway and Callwood for endangering the welfare of a child. (*Id.* ¶¶ 99, 101.)  They were arrested after the February 13 hearing, during which Hardaway had cross-examined some of the defendants.  (*Id.* ¶¶ 101-02.)  The arresting officer called Hardaway a racial slur and asked, "'[y]ou got any questions for me now?'"  (*Id.* ¶ 104.)  Per Culmone-Mills' preference, Hardaway and Callwood spent the night in jail and were released on their own recognizance on February 14.  (*Id.* ¶¶ 108, 110.) Later that day, Greene told Hardaway and Callwood that "'[d]riving luxury cars [referring to . . . Hardaway's Porsche] will get you the kind of police attention you do not want in Kingston'" and "'[y]ou were arrested so that we could find out who you were . . . [n]obody could figure out who you all were.'"  (*Id.* ¶¶ 111-12.)  The same day, Stitt told Greene that Manassas, Virginia (where Hardaway once rented an apartment) "'has a notorious sex trafficking issue being run by orientals and believed to be part of the Moonie cult,'" which "'explained why [Hardaway was driving] a Porsche.'" (*Id.* ¶¶ 92-93.)  The terms "orientals" and "Moonie cult" are derogatory terms used to describe the Unification religion and its members.  (*Id.* ¶ 94.)  Stitt also told Virginia authorities that Hardaway and Callwood "'were likely involved in sex trafficking and other crimes.'"  (*Id.* ¶ 95.)

Joern and unidentified DSS personnel posted Hardaway's and Callwood's mugshots on Facebook "and took turns disparaging them and 'liking' each other's negative comments." (*Id.* ¶ 58.) Joern mischaracterized the results of the application to return hearing and disclosed confidential information about Hardaway and Callwood. (*Id.*) Joern deleted electronic versions of her Facebook posts after Hardaway and Callwood learned that they existed. (*Id.*)

### 4. *Further Legal Proceedings*

Based on a neglect petition signed by Iapoce, the DSS Commissioner, on February 10, 2014, Family Court set a trial for July and August. (*Id.* ¶¶ 11, 52-57.) When ordering the return of A.H. and J.H. to Hardaway and Callwood on February 14, Family Court "issued a protective order requiring A.H.'s schooling [to] be compliant with state education law during the pendency of all [F]amily [C]ourt matters." (*Id.* ¶ 52.) On February 25, Greene filed a violation petition, signed by Iapoce, claiming Hardaway's and Callwood's non-compliance with the protective order because they failed to enroll A.H. in a school program. (*Id.* ¶ 56.) In April, Sorkin, the DSS Deputy Commissioner, Webb (a DSS caseworker), Joern, and "three other []DSS personnel" met and agreed to file an

emergency removal petition for A.H. "to circumvent" Family Court's trial scheduled for July and August.  (*Id.* ¶¶ 11, 59.)  Joern filed an emergency removal petition on April 7 and at a hearing the next day claimed the reason was that A.H.'s homeschooling plan was not registered with the Kingston City School District.  (*Id.* ¶¶ 60, 62.)  Family Court instructed Hardaway and Callwood to register A.H.'s homeschool plan with the Kingston City School District.[6]  (*Id.* ¶ 63.)  On August 13, after a trial in July and August, Family Court dismissed the neglect petition and violation petition.  (*Id.* ¶¶ 65, 72).  Sometime after that, Carnright, the Ulster County District Attorney, reviewed Family Court transcripts and met with subordinates at least twice.  (*Id.* ¶¶ 12, 115.)  The criminal charges against Hardaway and Callwood were voluntarily dismissed by the UCDAO at the end of October 2014.  (*Id.* ¶ 116.)

**B.** **Procedural History**

Hardaway and Callwood filed this action in late October 2015, asserting claims on behalf of themselves and their minor children, A.H.

---

[6] The Kingston City School District refused to register A.H. because she was not a Kingston resident.  (Am. Compl. ¶ 64.)  Despite this, apparently there were no further proceedings regarding the emergency removal petition, as plaintiffs made no other allegations concerning the same in the amended complaint.

and J.H., (Compl., Dkt. No. 1), and then filed an amended complaint in December 2015, (Am. Compl.).  The City defendants answered the amended complaint and cross-claimed against the County defendants for "contribution and/or indemnification."  (Dkt. No. 16 at 5.)  The County defendants filed the pending motion to dismiss, which Hardaway opposed but the City defendants did not.  (Dkt. Nos. 20, 37, 46.)

### III.  Standard of Review

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

Plaintiffs assert the following claims, which are numbered as in the amended complaint,[7] against various of the County defendants: (2) Meyer entered plaintiffs' hotel room "without a search warrant, probable cause,

---

[7] The numbering is not sequential because some of plaintiffs' claims are against the City defendants only.  Some of the claims made against the County defendants are also made against certain of the City defendants; for the sake of clarity, the City defendants are not included here.

consent, and in the absence of exigent circumstances" in violation of the

Fourth Amendment, (Am. Compl. ¶ 128); (3) Timbrouck and Meyer

confined A.H. and J.H. in a hospital room, which constituted

unconstitutional false imprisonment, (*id.* ¶ 130); (5) Timbrouck and Meyer

unlawfully removed A.H. and J.H. in violation of the Fourth Amendment,[8]

(*id.* ¶ 134); (6) "[t]he custodial interview of A.H. in the . . . hospital

room . . . constituted an unlawful Fourth Amendment violation seizure" by

Timbrouck and Meyer, (*id.* ¶ 136); (7) the second medical examination of

A.H. and J.H. constituted an unlawful seizure in violation of the Fourth

Amendment by Timbrouck and Meyer, (*id.* ¶ 138); (8) Timbrouck's and

Meyer's "acts of removing of [A.H. and J.H.], taking A.H.'s cellular phone,

forcing both to undergo two medical examinations and bearing false

witness in [F]amily [C]ourt hearings" in response to A.H.'s statements to

KPD officers constitutes First Amendment retaliation, (*id.* ¶ 140); (9) the

County defendants' "false arrest" of Hardaway and Callwood, decision to

keep them in jail overnight, "filing and continuation of spurious [F]amily

and [C]riminal court proceedings, manufacturing false evidence and

bearing false witness, [and] making disparaging Facebook comments" in

---

[8] Plaintiffs also cite the Fourteenth Amendment.  (Am. Compl. ¶ 134.)

response to Hardaway's cross-examination of a KPD officer, Stitt, Meyer, and Greene constitutes First Amendment retaliation, (*id.* ¶ 142); (10) the false testimony of and coverup of misconduct by Iapoce, Joern, Meyer, Greene, Stitt, and Culmone-Mills at the application to return hearing constitutes unconstitutional abuse of process, (*id.* ¶ 144); (11) Iapoce, Sorkin, Joern, Webb, and Greene acting "in actual malice" with intent to harm and with improper collateral objectives regarding the violation petition and emergency removal petition constitutes unconstitutional abuse of process, (*id.* ¶ 146); (12) Iapoce, Joern, Greene, Webb, and Meyer "initiat[ing] a bogus neglect . . . trial" and acting "in actual malice" with intent to harm and with improper collateral objectives in the neglect proceedings constitutes unconstitutional abuse of process, (*id.* ¶ 148); (15) Culmone-Mills' and Stitt's withholding of exculpatory evidence from UCDAO and forwarding of "fabricated evidence, false sworn statements, and perjured testimony" to UCDAO denied Hardaway and Callwood their right to a fair trial, (*id.* ¶ 154); (16) Culmone-Mills and Stitt "used fraud and perjury, misrepresented and falsified evidence, [and] withheld exculpatory evidence" in the criminal proceedings against Hardaway and Callwood, which constitutes malicious prosecution, (*id.* ¶ 156); (17) Culmone-Mills'

14

and Stitt's actions also constitute malicious prosecution under New York common law, (*id.* ¶ 158); (18) the County defendants "intended to and did deprive plaintiffs of substantive [due process] rights," (*id.* ¶ 160); (19) municipal liability lies against the County because of its policies and practices and failure to train, and Iapoce, Sorkin, and Carnright are liable for failure to supervise, (*id.* ¶¶ 162-64); (20) the County defendants' "unlawful and unconstitutional acts . . . were part and parcel of an agreement and conspiracy . . . to maliciously violate plaintiffs' civil rights," (*id.* ¶ 166); and (21) Stitt and Greene "intentionally discriminated against plaintiffs on the basis of race, religion, and economic status," and the County defendants treated Hardaway's "latchkey family . . . differently from other latchkey families" with "no rational basis," (*id.* ¶¶ 168-69).[9]

Plaintiffs also request punitive damages, (*id.* ¶ 172), "attorney's fees, costs, and disbursements" under 42 U.S.C. § 1988, (*id.* ¶ 176), "[a] permanent injunction ordering [the County] to add the name, title, organization, address, and telephone number of the caseworker removing a child to all future § 1024 removal notices," (*id.* ¶ 178), and a declaratory

---

[9] For the sake of clarity, the court will hereafter refer to plaintiffs' causes of action by the aforementioned numbers.

judgment declaring certain of the County's policies and practices unconstitutional, (*id.* ¶ 179).

The City defendants cross-claimed against the County defendants for "contribution and/or indemnification."  (Dkt. No. 16 at 5.)

## A.  **Immunity**

The County defendants argue that dismissal of a number of claims is appropriate because of various forms of immunity.  (Dkt. No. 20, Attach. 2 at 5-12.)  The court addresses each in turn.

### 1.  *Absolute Prosecutorial Immunity*

The County defendants assert that absolute prosecutorial immunity bars claims against Joern, Culmone-Mills, Carnright, Greene, Webb, Sorkin, and Iapoce.  (Dkt. No. 20, Attach. 2 at 5-7.)  However, at this juncture, only Carnright, Sorkin, and Iapoce are entitled to such immunity, for the reasons stated below.  On a more developed factual record, it may be that more of the County defendants are immune to at least some of Hardaway's claims; accordingly, the County defendants are free to raise this argument again at an appropriate time.

#### a.  *Joern*

Although Joern is "accorded absolute immunity from claims arising

out of the performance of her duties" as DSS counsel, *Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984), the amended complaint includes allegations that Joern made Facebook comments outside of her role as an attorney. (Am. Compl. ¶ 58.) Joern is not accorded absolute immunity for comments having no functional tie to the judicial process. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993)*; Warney v. Monroe Cty.*, 587 F.3d 113, 121 (2d Cir. 2009). The claims against Joern thus cannot be dismissed because of prosecutorial immunity at this time.

> b. *Culmone-Mills*

The claims against Culmone-Mills likewise cannot be dismissed at this time, because it is unclear whether Culmone-Mills' alleged involvement in the application to return hearing, (Am. Compl. ¶ 100), was within the scope of her prosecutorial duties. *See Walden*, 745 F.2d at 151. Moreover, Hardaway makes a state common law claim against Culmone-Mills, and the County defendants have failed to address if and how prosecutorial immunity would apply to a claim alleged pursuant to authority other than § 1983.

> c. *Carnright*

Carnright's review of court transcripts and meetings with

subordinates, (Am. Compl. ¶ 115), are part of the performance of his prosecutorial duties, and absolute immunity applies. *See Walden*, 745 F.2d at 152. Except for the failure to supervise claim that is addressed below, *see infra* Part IV.F.3, the claims against Carnright are thus dismissed.

### d. Greene, Webb, Sorkin, and Iapoce

Because "officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts," *Walden*, 745 F.2d at 151 (internal quotation marks and citations omitted), and the only allegations regarding Sorkin and Iapoce are their involvement with an emergency removal petition, a neglect petition, and a violation petition, (Am. Compl. ¶¶ 52, 56, 59), the claims against Sorkin and Iapoce are dismissed, with the exception of the failure to supervise claim that is addressed below.[10] Greene and Webb are not entitled to absolute immunity at this time because the allegations concerning them do no squarely show that they solely performed duties analogous to those of a prosecutor. (*Id.* ¶¶ 61, 112.)

### 2. Absolute Witness Immunity

----

[10] *See infra* Part IV.F.3.

The County defendants next argue that absolute witness immunity bars claims against Meyer, Greene, and Stitt.  (Dkt. No. 20, Attach. 2 at 8.)  "[A]bsolute witness immunity [applies] to Section 1983 actions arising out of or caused by the substance of public officials' allegedly false trial testimony."  *Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 447 (N.D.N.Y. 2001) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)), *aff'd*, 20 F. App'x 84 (2d Cir. 2001).  However, the County defendants failed to meaningfully articulate which of plaintiffs' claims arise out of or were caused solely by the substance of such testimony.  That is, the County defendants did not address why the alleged out-of-court actions of Meyer, Greene, and Stitt do not suffice to support plaintiffs' claims.[11]  At an appropriate time, the County defendants are free to raise this issue again.

   *3.    Qualified Immunity*

The County defendants also seek to dismiss the claims against Meyer, Timbrouck, and Stitt on the basis of qualified immunity.  (Dkt. No. 20, Attach. 2 at 8-11.)  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not

------

[11] Furthermore, plaintiffs allege a state common law claim against Stitt, and the County defendants have failed to address if and how witness immunity would apply to a claim alleged pursuant to authority other than § 1983.

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted). On the facts now before the court, which are drawn from the amended complaint and accepted as true, the County defendants have not established that qualified immunity applies.[12]

### 4. Eleventh Amendment Immunity

The County defendants argue that plaintiffs' claims against them in their official capacities are barred by the Eleventh Amendment. (Dkt. No. 20, Attach. 2 at 11-12.) "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Plaintiffs did not dispute the County defendants' Eleventh Amendment argument. Accordingly, the court

---

[12] The parties argue over whether New York Social Services Law § 419 applies in this context. (Dkt. No. 20, Attach. 2 at 9-10; Dkt. No. 37 at 28-29; Dkt. No. 46 at 3-4.) The court need not decide that issue at this time because even if § 419 applies, the issue of whether Meyer, Timbrouck, or Stitt are entitled to qualified immunity remains a fact-intensive inquiry not appropriately resolved at the motion to dismiss stage.

dismisses plaintiffs' claims for damages[13] against the County defendants in their official capacities, except for the County itself.[14]  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (holding Eleventh Amendment does not extend to counties or similar municipal corporations).

## B.    Fourth Amendment Claim for Hospital Examination

Plaintiffs' seventh cause of action is a § 1983 Fourth Amendment claim based on the medical examination of A.H. and J.H. at a hospital. (Am. Compl. ¶ 138.)  As argued by the County defendants, (Dkt. No. 20, Attach. 2 at 14), the claim against Timbrouck and Meyer must be dismissed because there are no allegations that either had any involvement regarding the medical examination, (Am. Compl. ¶¶ 25-30). Indeed, plaintiffs acknowledge that "[A.H. and J.H.] were undergoing a second medical examination in the hospital before . . . Meyer left his

---

[13] Plaintiffs' request for a declaratory judgment and a permanent injunction are addressed below.  *See infra* Part IV.F.1 and Part IV.H, respectively.

[14] Plaintiffs' claims against the County defendants in their official capacities (excepting the County) also must be dismissed because an "official-capacity suit is . . . to be treated as a suit against the entity" and "official-capacity claims a[re] unnecessary or redundant where similar claims [a]re asserted against the entity."  *Sheriff's Silver Star Ass'n of Oswego Cty., Inc. v. Cty. of Oswego*, 56 F. Supp. 2d 263, 265 n.3 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).

home."  (*Id.* ¶ 99(K).)

## C.   **First Amendment Retaliation**

### 1.    *First Amendment Retaliation as to A.H.*

The eighth cause of action is for Timbrouck's and Meyer's alleged retaliation against A.H. in violation of her First Amendment rights.  (Am. Compl. ¶ 140.)  "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  The claim against Timbrouck fails because there is no allegation that Timbrouck knew that A.H. spoke to KPD officers, let alone what A.H. said. (Am. Compl. ¶¶ 23, 35.)  The claim against Meyer likewise fails because plaintiffs do not sufficiently allege either "that [A.H.'s] speech [was] adversely affected by the government retaliation or that [A.H.] . . . suffered some other concrete harm" because of Meyer's actions.  *Dorsett*, 732 F.3d at 160.  Even if Meyer hid exculpatory evidence and gave false

testimony in Family Court,[15] (Am. Compl. ¶¶ 49, 69), there was no injury to A.H. because she was returned to Hardaway and Callwood upon completion of the application to return hearing, and the neglect and violation petitions were dismissed after trial in Family Court, (*id.* ¶¶ 52, 72).

### 2. First Amendment Retaliation as to Hardaway

Hardaway's ninth cause of action, which is against the County defendants for First Amendment retaliation based on acts in response to Hardaway's cross-examination during Family Court proceedings, (Am. Compl. ¶ 142), survives as to Stitt and Joern but must be dismissed as to the remaining County defendants, as explained below.

### a. Stitt

Stitt began her investigation after Hardaway's cross-examination of Meyer and a KPD officer, and Stitt said Hardaway and Callwood would be arrested because "'nothing seems to be adding up.'"[16] (Am. Compl. ¶¶ 73,

---

[15] Hardaway and Callwood also allege that the removal of A.H. and J.H., confiscation of A.H.'s cellular phone, and two medical examinations were done in retaliation for A.H.'s speech. (Am. Compl. ¶ 140.) However, the removal decision was made before A.H. told Meyer what happened, Meyer did not take A.H.'s cell phone, and Meyer had no involvement as to either medical examination. (*Id.* ¶¶ 24, 35, 41, 99(K).)

[16] The court notes that Stitt said this at a meeting with Culmone-Mills, Greene, and Meyer. (Am. Compl. ¶ 73.) The mere fact that Culmone-Mills, Greene, and Meyer were present at that meeting is insufficient to support a retaliation claim against any of them.

75, 142.)  These allegations facially constitute a valid First Amendment

retaliation claim.[17]  *See Dorsett*, 732 F.3d at 160.

### b.    Joern

Plaintiffs allege that Joern retaliated against Hardaway by making

disparaging Facebook comments.  (Am. Compl. ¶¶ 58, 142.)  As

described above, *see supra* Part IV.A.1.a, Joern is not entitled to

prosecutorial immunity for the Facebook comments.  The claim thus

survives as to Joern.

### c.    Culmone-Mills

Although Culmone-Mills is not entitled to absolute prosecutorial

immunity as to each claim against her, *see supra* Part IV.A.1.b, she is

immune regarding her "prefer[ence]" that Hardaway and Callwood spend

the night in jail after they were arrested, (Am. Compl. ¶ 108), because

such a decision is a "component[] of the initiation and presentation of a

prosecution," *Doe v. Phillips*, 81 F.3d 1204, 1213 (2d Cir. 1996).  As none

of Culmone-Mills' other conduct adversely affected Hardaway's speech or

caused him to suffer some other concrete harm, the First Amendment

---

[17] This claim is bolstered by the allegation that Stitt investigated Hardaway only and not Callwood.  (Am. Compl. ¶ 75.)

retaliation claim as to Culmone-Mills is dismissed.  *See Dorsett*, 732 F.3d at 160.

### d.    Remaining Defendants

Iapoce, Sorkin, and Carnright have absolute prosecutorial immunity, *see supra* Part IV.A.1.c-d, and Hardaway fails to sufficiently allege that the retaliation of Greene, Webb, Timbrouck, Meyer, or the County caused him concrete harm or an adverse effect on his speech, *see Dorsett*, 732 F.3d at 160.  Therefore, the First Amendment retaliation claim against them is dismissed.

## D.   **Malicious Prosecution**

The County defendants assert that plaintiffs' state law malicious prosecution claim (seventeenth cause of action) against Culmone-Mills and Stitt should be dismissed because plaintiffs failed to file a notice of claim, as required by New York state law.  (Dkt. No. 20, Attach. 2 at 15-16.)  But the court agrees with plaintiffs that a notice of claim is not required for an intentional tort claim against a municipal employee in her individual capacity for which the municipality has no obligation to indemnify the employee.  *See Lluberes v. City of Troy*, No. 11-CV-1346, 2014 WL 1123413, at *21 (N.D.N.Y. Mar. 21, 2014)*; Knox v. Cty. of*

*Ulster,* No. 1:11-CV-0112, 2013 WL 286282, at *9 (N.D.N.Y. Jan. 24, 2013).  The County defendants do not argue that the County has an obligation to indemnify Culmone-Mills and Stitt for malicious prosecution, and thus the claim survives.[18]

## E.   **Substantive Due Process**

The court dismisses plaintiffs' eighteenth cause of action, which claims a substantive due process violation, because it violates Rule 8(a)(2), as argued by the County Defendants.  (Dkt. No. 20, Attach. 2 at 5.)[19]  The claim does not specify which actions violate substantive due process, nor which defendants are responsible, nor whose rights were violated, nor even which substantive due process rights are at issue.  (Am. Compl. ¶ 160.)  The only factual content supporting the claim is a reference incorporating the previous 158 paragraphs, and "[s]uch general

---

[18] The court notes the County defendants' argument for dismissal based on plaintiffs' allegation that "[a]t all times relevant, the individual defendants acted in the scope of their employment."  (Dkt. No. 46 at 6-7 (internal quotation marks omitted).)  However, dismissal on that basis would unduly favor form over substance.  Plaintiffs make a claim of malicious prosecution, which, as an intentional tort, necessarily implies that individuals were acting outside the scope of their employment.

[19] The County defendants argue that the entire Amended Complaint should be dismissed for violating Rule 8.  (Dkt. No. 20, Attach. 2 at 5.)  Although the court does not agree with the County defendants to that extent, the argument is accepted as it applies to plaintiffs' eighteenth cause of action.  In any event, the court has the power to dismiss a claim *sua sponte* for failure to comply with Rule 8(a)(2).  *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give fair notice of what the claim is and the grounds upon which it rests." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268-69 (S.D.N.Y. 2010) (internal quotation marks and citations omitted); *see United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 n.75 (E.D.N.Y. 2007) ("[I]t is not the duty of the defendants or this [c]ourt to sift through the [c]omplaint and guess which factual allegations support which claims.") (internal quotation marks and citation omitted).

## F.  Municipal Liability and Supervisory Liability

Hardaway's nineteenth cause of action consists of claims of municipal liability on the grounds of policy and practices and failure to train, as well as supervisory liability claims.  (Am. Compl. ¶¶ 162-64.)  The court addresses each of these in turn.

### 1.  Municipal Liability: Policy and Practices

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v.*

*Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (internal citations omitted). "[A]part from a detailed recounting of [their] own experiences, [plaintiffs'] complaint contains only general and conclusory allegation[s]" as to the County's policies and practices, *Schnauder v. Gibens*, 679 F. App'x 10 (2d Cir. 2017) (internal quotation marks and citation omitted), and plaintiffs thus fail to state a municipal liability claim based on a custom, policy, or usage. *See Uwadiegwu v. Dep't of Soc. Servs.*, 639 F. App'x 13, 16 (2d Cir. 2016). The claim is dismissed, and plaintiffs' request for a declaratory judgment, (Am. Compl. ¶ 179), is dismissed for the same reasons. *See Cty. of Los Angeles v. Humphries*, 562 U.S. 29, 31 (2010).

2. *Municipal Liability: Failure to Train*

Plaintiffs also fail to state a municipal liability claim on the grounds of the County's failure to train. "[A] municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989)). But plaintiffs fail to "identify a specific deficiency in the [County]'s training program and establish that that deficiency . . . actually

caused [any] constitutional deprivation." *Id.* at 129 (internal quotation marks and citation omitted). A failure to train claim must "be based on more than the mere fact that the misconduct occurred in the first place," which plaintiffs' conclusory allegations fail to provide. *Id.* (internal citations omitted). The claim is thus dismissed.

### 3. Supervisory Liability

A supervisor may be held personally liable[20] under § 1983 if he "(1) directly participated in the infraction, (2) failed to remedy the wrong after learning of the violation, (3) created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue, or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event." *Abbas v. Senkowski*, No. 03CV476, 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). The allegations that Carnright, Iapoce, and Sorkin directly participated in Constitutional violations, (Am. Compl. ¶ 164(a)), are barred by absolute prosecutorial immunity. *See supra* Part IV.A.1.c-d. And even if those allegations were

---

[20] The court notes that supervisory liability (where a supervisor is personally liable) is distinct from municipal liability (where a municipal entity is liable). Plaintiffs include claims for each in their nineteenth cause of action. (Am. Compl. ¶¶ 162-64.)

not barred by absolute immunity, they do not satisfy any of the aforementioned bases for liability. The claims, (Am. Compl. ¶ 164(b)-(d)), are conclusory and "naked assertion[s] devoid of further factual enhancement," and the court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (internal quotation marks and citations omitted). Therefore, plaintiffs' failure to supervise claims are dismissed.

## G.   Punitive Damages

The County defendants argue that punitive damages are not available against a municipality, (Dkt. No. 20, Attach. 2 at 18), and plaintiffs fail to show otherwise. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). Thus, plaintiffs' demand for punitive damages against the County is dismissed. However, the County defendants have not provided a valid basis for dismissing plaintiffs' demand for punitive damages from the County defendants (excepting the

County) in their individual capacities.[21]

## H.    <u>Permanent Injunction</u>

Because plaintiffs "ha[ve] made no showing that [they are] realistically threatened by a repetition" of the alleged harm that they suffered as a result of the § 1024 removal notice's lack of contact information, plaintiffs lack standing to seek an injunction.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  Even if plaintiffs had standing, an injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met [because] there is no showing of any real or immediate threat that . . . plaintiff[s] will be wronged again" by an omission of contact information from a § 1024 removal notice.  *Id.* at 111.

## I.    <u>Attorney's Fees</u>

Under § 1988, a prevailing party in a § 1983 action may be allowed to recover reasonable attorney's fees.  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998) (citing 42 U.S.C. §§ 1988).  But a decision on that issue is premature at this stage of the proceedings.  *See Rielly v.*

---

[21] All claims for damages against the County defendants (excepting the County) in their official capacities have been dismissed.  *See supra* Part IV.A.4.

*Barkley*, No. 91 CV 4871, 1992 WL 390282, at *2 (E.D.N.Y. Dec. 15, 1992).

**J.  The City Defendants' Cross-Claim**

The County defendants moved to dismiss the cross-claim brought against them by the City defendants.  (Dkt. No. 20, Attach. 2 at 1; Dkt. No. 16 at 5.)  The court deems the City defendants' failure to file any opposition as consent to the granting of the motion under Local Rule 7.1(b)(3), and their cross-claim is hereby dismissed.  *See Burns v. Trombly*, 624 F. Supp. 2d 185, 197 (N.D.N.Y. 2008).

**K.  Other Observations**

The court notes that it appears plaintiffs' tenth, eleventh, and twelfth causes of action are subject to dismissal because § 1983 liability may not be predicated on a claim of malicious abuse of civil process.  *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009).  However, because the issue was neither raised nor argued by the parties, the court declines to dismiss those claims at this time.

The court also notes that Hardaway withdrew his thirteenth cause of action for "false arrest / false imprisonment" as to Culmone-Mills and Stitt. (Dkt. No. 37 at 1.)

Finally, the court notes that the dismissal of plaintiffs' claims is with prejudice because plaintiffs have already amended their complaint once, and they did not seek leave to amend their complaint for a second time in their opposition to the County defendants' motion to dismiss. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994).

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the County defendants' motion to dismiss (Dkt. No. 20) is **GRANTED IN PART** and **DENIED IN PART** as detailed below; and it is further

**ORDERED** that all of plaintiffs' causes of action as against the County defendants (excepting the County) in their official capacities for damages (Am. Compl. ¶¶ 125-180) are **DISMISSED**; and it is further

**ORDERED** that plaintiffs' eighteenth and nineteenth causes of action (Am. Compl. ¶¶ 159-60, 161-64) and requests for a permanent injunction and a declaratory judgment (Am. Compl. ¶¶ 178-79) are **DISMISSED**; and it is further

**ORDERED** that plaintiffs' demand for punitive damages (Am. Compl. ¶ 175) as against the County is **DISMISSED**; and it is further

**ORDERED** that plaintiffs' ninth cause of action (Am. Compl. ¶¶ 141-42) is **DISMISSED** as against Culmone-Mills, Greene, Webb, Timbrouck, Meyer, Carnright, Sorkin, Iapoce, and the County; and it is further

**ORDERED** that plaintiffs' tenth, eleventh, twelfth, twentieth, and twenty-first causes of action (Am. Compl. ¶¶ 143-44, 145-46, 147-48, 165-66, 167-71) are **DISMISSED** as against Carnright, Sorkin, and Iapoce; and it is further

**ORDERED** that plaintiffs' seventh and eighth causes of action (Am. Compl. ¶¶ 137-38, 139-40) are **DISMISSED** as against Timbrouck and Meyer; and it is further

**ORDERED** that plaintiffs' thirteenth cause of action (Am. Compl. ¶¶ 149-50) is **DISMISSED** as against Culmone-Mills and Stitt; and it is further

**ORDERED** that the City defendants' cross-claim (Dkt. No. 16 at 5) is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 29, 2017
Albany, New York

Gary L. Sharpe
U.S. District Judge