**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANGIE CALLWOOD et al.,**

                        **Plaintiffs,**                                     **1:15-cv-1298**
                                                                            **(GLS/TWD)**

            **v.**

**CITY OF KINGSTON et al.,**

                        **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Johnathon Hardaway | JOHNATHON HARDAWAY, ESQ. |
| 5185 Macarthur Boulevard, NW, | |
| Suite 611 | |
| Washington, DC 20016 | |
| | |
| O'Connell, Aronowitz Law Firm | ELIZABETH A. CONNOLLY, ESQ. |
| 54 State Street | MICHAEL P. MCDERMOTT, ESQ. |
| 9th Floor | STEPHEN R. COFFEY, ESQ. |
| Albany, NY 12207-2501 | |
| | |
| Bergstein & Ullrich, LLP | STEPHEN BERGSTEIN, ESQ. |
| 5 Paradies Lane | |
| New Paltz, NY 12561 | |
| | |
| **FOR THE DEFENDANTS:** | |
| _City of Kingston, Michael Mills,_ | |
| _Robert Farrell, Timothy Bowers,_ | |
| _Richard Negron, Kirk Strand, and_ | |
| _Emily-Claire E. Sommer_ | |
| Cook, Tucker Law Firm | MICHAEL T. COOK, ESQ. |
| 85 Main Street | |
| P.O. Box 3939 | |
| Kingston, NY 12401 | |

Cook, Netter Law Firm                 ROBERT D. COOK, ESQ.
85 Main Street
P.O. Box 3939
Kingston, NY 12402

*County of Ulster, Pamela Joern,*
*James Meyer, Denise Timbrouck,*
*Amy Greene, Peggy Webb, Tamatha*
*Stitt, Elizabeth Culmone-Mills*
Maynard, O'Connor Law Firm            ADAM T. MANDELL, ESQ.
Route 9W                              MICHAEL E. CATALINOTTO, JR.,
P.O. Box 180                          ESQ.
Saugerties, NY 12477

6 Tower Place                         KELLY ANN KLINE, ESQ.
Albany, NY 12203

**Gary L. Sharpe**
**Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

## I. <u>Introduction</u>

Plaintiffs Angie Callwood and Johnathon Hardaway, on behalf of themselves and their minor children, A.H and J.H., commenced this action against defendants City of Kingston, Michael Mills, Robert Farrell, Timothy Bowers, Richard Negron, Kirk Strand, Emily-Claire E. Sommer (collectively, "City defendants"), County of Ulster, Pamela Joern, James Meyer, Denise Timbrouck, Amy Greene, Peggy Webb, Tamatha Stitt, and Elizabeth Culmone-Mills (collectively, "County defendants") pursuant to 42 U.S.C.

2

§ 1983 and New York state law.  (Am. Compl., Dkt. No. 4.)

Now pending are motions for summary judgment filed by County defendants, (Dkt. No. 188), and City defendants, (Dkt. No. 189), as well as plaintiffs' cross-motion for partial summary judgment against all defendants, (Dkt. No. 196).  For the reason stated below, County defendants' and City defendants' motions are granted in part and denied in part, and plaintiffs' cross-motion is denied.

## II. Background

### A. Facts[1]

#### 1. Events of February 8, 2014

On February 8, 2014, plaintiffs stayed at a Super 8 Hotel in Kingston, New York.  (City Defs.' Statement of Material Facts (SMF) ¶ 8, Dkt. No. 189, Attach. 28; Pls.' SMF ¶ 1, Dkt. No. 196, Attach. 1.)  In the late afternoon of that day, Rebecca Maxwell, the general manager of the hotel, called the Kingston Police Department (KPD) to report a noise complaint concerning plaintiffs' room.  (County Defs.' SMF ¶ 1, Dkt. No. 188, Attach. 55; City Defs.' SMF ¶ 9; Pls. SMF ¶ 5.)  KPD officers Mills and Farrell responded to the hotel, where, after speaking to Maxwell, they

---

[1] Unless otherwise noted, the facts are undisputed.

discovered that A.H. and J.H., then twelve years old and four years old, respectively, were left unattended in the hotel room, and that Hardaway and Callwood could not be reached.  (County Defs.' SMF ¶¶ 3-4; City Defs.' SMF ¶¶ 15-16.)

Mills and Farrell knocked on the hotel room door, announcing themselves as police officers.  (City Defs.' SMF ¶ 17; Pls.' SMF ¶ 7.)  City defendants allege that A.H. opened the door, and informed Mills and Farrell that Hardaway and Callwood had gone to dinner, and while the door was open, Mills and Farrell observed that J.H. had a "full diaper," and that A.H. appeared "sickly" and was wearing clothes that looked to be unwashed. (City Defs.' SMF ¶¶ 19-23.)  On the other hand, plaintiffs allege that A.H. refused to open the door, and that the officers entered with a hotel keycard and without consent.  (Pls. SMF ¶ 8.)  Plaintiffs also allege that Mills' and Farrell's testimony regarding the condition of A.H. and J.H. has been inconsistent throughout the litigation, and that, at one point, Mills testified that the children "exhibited no signs of abuse or injury."  (*Id.* ¶ 15.)  At some point, a third KPD officer, Sommer, was called to the scene, where she observed that "J.H. appeared to be unbathed and had a slight odor."  (City Defs.' SMF ¶¶ 29, 33; Pls.' SMF ¶ 24.)

4

Defendants' allege that multiple attempts at contacting Hardaway and Callwood were made.  (County Defs.' SMF ¶ 30; City Defs.' SMF ¶ 25.) But plaintiffs allege that Hardaway did not receive a call, that his phone records prove this, and that KPD had no reason to know his name or phone number while they were at the hotel.  (Pls. SMF ¶¶ 9, 16.) Nevertheless, Mills and Farrell reported their findings to KPD Sergeant Strand, who determined that Child Protective Services (CPS) would have to be notified, and that an ambulance would be called to examine A.H. and J.H.  (County Defs.' SMF ¶¶ 5-8; City Defs.' SMF ¶¶ 26-28, 34.)

Upon arrival to the hotel, paramedics observed that the room was in "disarray" and decided that, because A.H. and J.H. were "unaccompanied minors, they ha[d] no choice but to transfer them to the hospital for medical evaluation."  (County Defs.' SMF ¶¶ 9-11; City Defs.' SMF ¶ 35.)  Plaintiffs allege that Mills and Farrell caused the room to be in disarray.  (Pls.' SMF ¶ 10.)  Plaintiffs also allege that the paramedics observed that A.H. and J.H. were healthy and not dirty or unkempt, and that Mills and Farrell directed the paramedics to take the children to the hospital.  (*Id.* ¶¶ 20, 21.) Sommer accompanied the children to the hospital, where the children were examined by doctors who found that A.H. and J.H. were well-groomed and

healthy.  (*Id.* ¶¶ 27-29.)

CPS caseworker, Meyer, then received a call from Ulster County CPS informing him of the suspected neglect.  (County Defs.' SMF ¶ 12; City Defs.' SMF ¶ 37; Pls.' SMF ¶ 25.)  Meyer contacted KPD who told him that KPD had responded to the scene of a hotel room where two minor children, whose parents could not be contacted, had been left unattended in a room that was a "mess"; that J.H. "was wearing a diaper that was overflowing"; and that the children "were being transported to the hospital." (County Defs.' SMF ¶¶ 14, 16; Pls.' SMF ¶ 25.)  Meyer then contacted his supervisor, Timbrouck, who determined that A.H. and J.H. would need to be removed from their parents' custody.  (County Defs.' SMF ¶¶ 18-19; City Defs.' SMF ¶¶ 41-42.)  Plaintiffs note that Strand and Timbrouck made their respective determinations without seeing the hotel room or the children. (Pls.' SMF ¶ 26.)

Meyer arrived at the hotel room after A.H. and J.H. had already been transported to the hospital.  (County Defs.' SMF ¶ 24.)  Meyer entered the hotel room with Mills and Farrell in order to take photographs of the room. (*Id.* ¶ 26; City Defs.' SMF ¶ 44.)  Plaintiffs allege that they needed a hotel keycard to enter.  (Pls.' SMF ¶ 31.)  Meyer made the following

6

observations: (1) "the floor was barely visible" due to clothes and food scattered around the room; (2) "[t]here was an overturned wastebasket and a toothbrush on the floor"; (3) on top of the sink was a "curling iron" and a "coffee pot"; (4) "purple juice" and a bottle of Advil had spilled onto the bed; and (5) there were "red spots" and a "brown smear" on the bed sheets, which appeared to be blood and feces.  (County Defs.' SMF ¶ 27; City Defs.,' SMF ¶ 45.)  Plaintiffs allege that the blood was caused by a "tiny cut" on J.H.'s finger that he received while the officers were at the hotel, and that the brown smear was chocolate syrup.  (Pls.' SMF ¶ 11.)

Meyer spoke with hotel staff members who informed him that the room has been in a state of disarray on prior occasions, and that A.H. and J.H. had been left unattended at their hotel room before as well.  (County Defs.' SMF ¶¶ 32-33.)  Meyer then left the room for the hospital, and left removal papers in the room and with KPD.  (*Id.* ¶ 34; City Defs.' SMF ¶ 47.)  Plaintiffs' state that Meyer left a note at the hotel room that only contained the contact number for the Ulster County Courthouse, which was closed until February 10, 2014.  (Pls.' SMF ¶ 34.)

Meyer interviewed A.H. at the hospital, who, according to County defendants, told him that "she's alone with her brother 'a lot.'"  (County

7

Defs.' SMF ¶ 35; Pls.' SMF ¶ 63.)  Meyer testified that A.H. and J.H. appeared healthy at the hospital, that there was no evidence of abuse, and that hospital staff did not express any medical concerns related to the children.  (Pls.' SMF ¶ 37.)  Nevertheless, Meyer did not update Timbrouck as to the children's conditions.  (*Id.*)  When the children were discharged from the hospital, Meyer placed them into foster care.  (County Defs.' SMF ¶ 36; City Defs.' SMF ¶ 51; Pls.' SMF ¶¶ 39-40.)

Plaintiffs allege that Meyer refused A.H.'s request to call her parents or go back to the hotel before being placed in foster care.  (Pls.' SMF ¶ 40.) Meyer eventually talked to Hardaway on the phone.  (*Id.* ¶ 44.)  He told Hardaway that the children were removed because J.H. had a seizure, and that the children could not be returned to Hardaway and Callwood that night.  (*Id.*)  Meyer testified that state law does not prohibit a twelve-year-old from babysitting a four-year-old.  (*Id.*)  A.H. and J.H. were in foster care for seven days.  (*Id.* ¶ 41.)

### 2.   *February 10-14, 2014 Civil Proceedings*

On February 10, 2014, Ulster County Department of Social Services (DSS) filed an application for removal and a neglect petition.  (County Defs.' SMF ¶ 38; City Defs.' SMF ¶ 52.)  The application and petition were

based on information provided by CPS to Joern, the DSS staff attorney who handled the case, that the children were found unattended without supervision, the condition of the room in which they were found was poor, the children needed to be transported to the hospital, and the parents could not be reached.  (County Defs.' SMF ¶ 41.)  Plaintiffs allege that Joern informed Hardaway and Callwood that she believed the children were removed because J.H. had a seizure.  (Pls.' SMF ¶ 46.)  On that same day, plaintiffs filed an application to return their children pursuant to N.Y. Fam. Ct. Act § 1028.  (*Id.*)

A hearing on these matters was held on February 10, 11, 13, and 14, 2014 before Ulster County Family Court Judge Anthony McGinty.  (*Id.*) Judge McGinty directed that "the children would remain in DSS custody until the . . . hearing was completed."  (County Defs.' SMF ¶ 63.)  Judge McGinty heard testimony from Meyer; Greene, a DSS case worker; and Stitt, an investigator with the Ulster County District Attorney's Office (DAO). (*Id.* ¶¶ 44-45, 48.)  Stitt testified at the hearing because she was assigned to investigate plaintiffs' case by Culmone-Mills, an assistant district attorney.  (*Id.* ¶¶ 47-48.)  Plaintiffs allege that throughout the hearing, Joern, Greene, and Meyer continuously disobeyed Judge McGinty's

9

instructions to allow Hardaway and Callwood to meet with A.H. and J.H. (Pls.'s SMF ¶¶ 48-49.)

Plaintiffs also allege that throughout the hearing, Meyer provided inconsistent testimony that was not supported by the evidence, and that Mills provided false testimony regarding, among other things, J.H.'s height; the conditions of the children and the hotel room; whether or not KPD attempted to contact Hardaway and/or Callwood; and whether or not KPD directed the paramedics to remove the children.  (*Id.* ¶¶ 63-64.)

At the conclusion of the hearing, Judge McGinty ordered that A.H. and J.H. be immediately returned to their parents' custody, but determined that imminent risk of danger was present at the time of their removal. (County Defs.' SMF ¶ 64; Pls.' SMF ¶ 69.)  Judge McGinty issued an order of protection that required, among other things, that A.H. and J.H. be kept in New York State, that DSS be apprised of the family's whereabouts, and that DSS caseworkers be permitted to inspect the family home.  (County Defs.' SMF ¶ 65; Pls.' SMF ¶ 72.)  The neglect petition was ultimately dismissed.  (County Defs.' SMF ¶ 88.)

3.    *February 13, 2014 Arrest of Hardaway and Callwood*

On February 13, 2014, Bowers, a KPD detective, and Culmone-Mills

10

discussed the possibility of bringing criminal charges against Hardaway and Callwood.  (County Defs.' SMF ¶ 55; City Defs.'s SMF ¶ 57.)  Culmone-Mills discussed this with her supervisor, Ulster County District Attorney Holley Carnright, who determined that there was probable cause to charge Hardaway and Callwood for endangering the welfare of a child.  (County Defs.' SMF ¶ 56; City Defs.' SMF ¶ 57; Pls.' SMF ¶ 55.)  Plaintiffs allege that Culmone-Mills greatly exaggerated and even misrepresented the underlying facts to Carnright.  (Pls.' SMF ¶¶ 53-54, 56.)

After speaking with Mills and Culmone-Mills, Bowers, along with fellow KPD detective, Negron, arrested Hardaway and Callwood at the Ulster County Family Court.  (County Defs.'s SMF ¶¶ 59, 61; City Defs.' SMF ¶¶ 60-63.)  City defendants' allege that Culmone-Mills "ordered" the arrest.  (City Defs.' SMF ¶ 59.)  County defendants' allege that Culmone-Mills "did not make the determination to charge [Hardaway and Callwood]" or "direct the[ir] arrest."  (County Defs.' SMF ¶¶ 57, 60.)  Prior to discussing the matter with Culmone-Mills, there had been no criminal investigation into Hardaway and Callwood by KPD.  (Pls.' SMF ¶ 56.)  Plaintiffs allege that Culmone-Mills also greatly exaggerated and even misrepresented the underlying facts to Bowers as well.  (Id. ¶ 58.)  Plaintiffs allege that "[b]y

falsely claiming to Carnright [that] Negron and Bowers brought evidence of a KPD investigation to her attention, Culmone-Mills circumvented" many steps of KPD protocol.  (*Id.* ¶ 59.)

Plaintiffs further allege that, during the course of the arrest, Mills used a racial slur towards Hardaway, and that Mills, Bowers, and Negron refused plaintiffs' requests for medical attention, causing Hardaway to pass out from his heart and blood pressure conditions.  (*Id.* ¶ 65.)  And, "although . . . KPD planned on releasing them with an appearance ticket, Culmone-Mills requested they be in jail overnight instead."  (*Id.* ¶ 66.) Hardaway and Callwood were released on their own recognizance on February 14, 2014.  (City Defs.' SMF ¶ 68; Pls.' SMF ¶ 67.)  Plaintiffs allege that Hardaway and Callwood were interrogated by Bowers and Negron, who asked questions given to them by Culmone-Mills.  (Pls.' SMF ¶ 68.)  The criminal charges against Hardaway and Callwood were ultimately dismissed.  (*Id.* ¶ 83.)

Plaintiffs allege that Joern and eight other DSS personnel posted Hardaway and Callwood's "mugshots" on Facebook, and disparaged them in the "comments."  (*Id.* ¶ 96.)  Plaintiffs further allege that Stitt called Callwood's religion, Unification, a "cult."  (*Id.* ¶ 94.)  County defendants

deny both allegations.  (County Defs.' SMF ¶¶ 84, 87.)

## B.    Procedural History

Plaintiffs commenced this action on October 31, 2015, bringing

claims on behalf of themselves and their minor children, A.H. and J.H.

(Compl., Dkt. No. 1), and then filed an amended complaint on December 3,

2015, in which they allege twenty-one claims against eighteen defendants,

(Am. Compl.).  City defendants answered the amended complaint and

cross-claimed against County defendants for "contribution and/or

indemnification."  (Dkt. No. 16.)  County defendants then filed a motion to

dismiss, (Dkt. No. 20), which plaintiffs opposed but City defendants did not,

(Dkt. Nos. 37, 46).  The court granted in part and denied in part County

defendants' motion to dismiss, dismissing City defendants' cross-claim,

terminating three previously-named defendants, and dismissing certain

claims against other defendants.  (Dkt. No. 110.)

The following causes of action remain: (1) a Fourth Amendment claim

for unlawful entry and search of the hotel room while A.H. and J.H. were

present, against Mills and Farrell; (2) a Fourth Amendment claim for

unlawful entry and search while the hotel room was vacant, against Mills,

Farrell, Strand, and Meyer; (3) a false imprisonment claim pursuant to 42

13

U.S.C. § 1983, against Mills, Farrell, Strand, Sommer, Meyer, and Timbrouck; (4) a Fourth Amendment claim for an unlawful medical examination of A.H. and J.H. in the hotel room pursuant to 42 U.S.C. § 1983, against Mills, Farrell, Strand, and Sommer; (5) a Fourth Amendment claim for unlawfully removing A.H. and J.H. from Hardaway's and Callwood's custody, against Mills, Farrell, Strand, Sommer, Meyer, and Timbrouck; (6) a Fourth Amendment claim for unlawfully interviewing A.H., against Mills, Farrell, Strand, Sommer, Meyer, and Timbrouck; (7) a Fourth Amendment claim for an unlawful medical examination of A.H. and J.H. in the hospital, against Mills, Farrell, Strand, and Sommer; (8) a claim of First Amendment retaliation on A.H., against Mills, Farrell, Strand, and Sommer; (9) a claim of First Amendment retaliation on Hardaway, against Mills, Bowers, Negron, Joern, and Stitt[2]; (10) an abuse of process claim pursuant to 42 U.S.C. § 1983 regarding the application to return hearing, against Mills, Joern, Meyer, Greene, and Webb[3]; (11) an abuse of process claim pursuant to 42 U.S.C. § 1983 regarding the violation and emergency

---

[2]  Plaintiffs withdraw this claim as against Farrell, Strand, and Sommer.  (Dkt. No. 196, Attach. 4 at 21 n.11.)

[3]  Plaintiffs withdraw this claim as against Stitt and Culmone-Mills.  (Dkt. No. 196, Attach. 2 at 18 n.6.)

removal petitions, against Joern, Greene, and Webb; (12) an abuse of process/malicious prosecution claim pursuant to 42 U.S.C. § 1983 regarding the neglect petition, against Mills, Farrell, Joern, Meyer, Greene, and Webb; (13) a false arrest/false imprisonment claim pursuant to 42 U.S.C. § 1983, against Mills, Bowers, Negron, and Strand[4]; (14) an Eighth Amendment claim for deliberate indifference to serious medical needs, against Mills, Bowers, Negron, and Strand; (15) a claim for denial of a right to a fair trial pursuant to 42 U.S.C. § 1983, against Mills, Bowers, Negron, Stitt, and Culmone-Mills[5]; (16) a malicious prosecution claim pursuant to 42 U.S.C. § 1983, against Mills, Bowers, Negron, Stitt, and Culmone-Mills[6]; (17) a malicious prosecution claim pursuant to New York state law, against Mills, Bowers, Negron, Stitt, and Culmone-Mills[7]; (18) a Fourteenth Amendment substantive due process claim, against Mills, Farrell, Strand, and Sommer[8]; (19) a municipal liability claim against the City; (20) a

---

[4]  Plaintiffs withdraw this claim as against Farrell.  (Dkt. No. 196, Attach. 4 at 22 n.15.)

[5]  Plaintiffs withdraw this claim as against Farrell.  (*Id.* at 24 n.16.)

[6]  Plaintiffs withdraw this claim as against Farrell.  (*Id.* at 25 n.17.)

[7]  Plaintiffs withdraw this claim as against Farrell.  (*Id.*)

[8]  Plaintiffs withdraw this claim as against Bowers and Negron.  (*Id.* at 27 n.18.)  And the claim against the City is dismissed, based on the court's ruling that plaintiffs have not established municipal liability.  *See infra* Part IV.A.

conspiracy claim pursuant to 42 U.S.C. § 1983, against Mills, Bowers, Negron, Joern, Meyer, Webb, Stitt, and Culmone-Mills[9]; and (21) a Fourteenth Amendment equal protection claim, against Mills, Bowers, Negron, Joern, Stitt, and Culmone-Mills.[10]  (*See generally* Am. Compl.; Dkt. No. 110.)

After a lengthy discovery process, which concluded in July 2019, (Dkt. No. 174), defendants filed the pending motions for summary judgment, (Dkt. Nos. 188-89).  Plaintiffs opposed the motions and cross-moved for partial summary judgment as to their first seven causes of action, which is also pending.  (Dkt. No. 196.)

### III.  Standards of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489

---

[9]  Plaintiffs withdraw this claim against Farrell, Strand, Sommer, Timbrouck, and Greene.  (Dkt. No. 196, Attach. 2 at 24 n.8; Dkt. No. 196, Attach. 4 at 28 n.19.)  And the claim against the City and the County is dismissed, based on the court's ruling that plaintiffs have not established municipal liability.  *See infra* Part IV.A.

[10]  Plaintiffs withdraw this claim as against Farrell, Strand, Sommer, Timbrouck, and Greene.  (Dkt. No. 196, Attach. 2 at 25 n.9; Dkt. No. 196, Attach. 4 at 29 n.20.)  And the claim against the City and the County is dismissed, based on the court's ruling that plaintiffs have not established municipal liability.  *See infra* Part IV.A.

F. App'x 500 (2d Cir. 2012).

## IV. <u>Discussion</u>

### A. <u>Municipal Liability</u>

City defendants' move for summary judgment as to plaintiffs'

nineteenth cause of action, which now consists of a claim of municipal

liability based on the theories of policy and practices, and failure to train

against the City. (Dkt. No. 189, Attach. 27 at 3-4.) Although City

defendants' motion is one for summary judgment, their argument as to this

claim appears to be a 12(b)(6) argument, which has not been waived. *See*

Fed R. Civ. P. 12(h). As explained in the court's order on County

defendants' motion to dismiss, (Dkt. No. 110 at 27-29), the allegations

supporting this claim are entirely general and/or conclusory, and the claim

must be dismissed.

"[A] municipality can be held liable under Section 1983 if the

deprivation of the plaintiff's rights under federal law is caused by a

governmental custom, policy, or usage of the municipality." *Jones v. Town

of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citations omitted). "[A]part

from a detailed recounting of [their] own experiences, [plaintiffs' amended]

complaint contains only general and conclusory allegation[s]" as to the

17

City's policies and practices, *Schnauder v. Gibens*, 679 F. App'x 8, 10 (2d Cir. 2017) (internal quotation marks and citation omitted), and plaintiffs thus fail to state a municipal liability claim based on a custom, policy, or usage, *see Uwadiegwu v. Dep't of Soc. Servs.*, 639 F. App'x 13, 16 (2d Cir. 2016).

Plaintiffs' attempt to cure this deficiency on summary judgment by citing to testimony from Strand that it is KPD policy to call for an EMT when children are left unattended for an undetermined amount of time is unavailing, as this argument—even if sufficient—only applies to plaintiffs' fourth and seventh causes of action, which are not brought against the City.  (Am. Compl. ¶¶ 131-32, 137-38.)

Plaintiffs also fail to state a municipal liability claim on the grounds of the City's failure to train.  "[A] municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training."  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989)). But plaintiffs fail to "identify a specific deficiency in the [C]ity's training program and establish that that deficiency . . . actually caused [any]

18

constitutional deprivation." *Id.* at 129 (internal quotation marks and citation omitted).  A failure to train claim must "be based on more than the mere fact that the misconduct occurred in the first place," which plaintiffs' conclusory allegations fail to provide.  *Id.* (citations omitted).  Plaintiffs' continue to rely on bare and conclusory allegations to support their failure to train claim.  (Dkt. No. 196, Attach. 4 at 27-28.)

Accordingly, City defendants' motion for summary judgment as to plaintiffs' nineteenth cause of action for municipal liability against the City is granted, and that claim is dismissed.

**B.   Fourth Amendment Claims**

*1.   Entering and Searching Hotel Room with A.H. and J.H. Present*

City defendants move for summary judgment as to plaintiffs' first cause of action, which is a Fourth Amendment claim for unlawful entry and search of the hotel room while A.H. and J.H. were present, against Mills and Farrell.  (Dkt. No. 189, Attach. 27 at 5-8.)  Plaintiffs' cross-move for summary judgment as to this claim.  (Dkt. No. 196, Attach. 4 at 14-15.)

"Warrantless entries, including entries into hotel rooms, are presumptively unreasonable under the Fourth Amendment."  *United States v. Emanus*, 391 F. App'x 66, 67 (2d Cir. 2010) (citations omitted).

19

However, warrantless entries may be justified by the existence of exigent circumstances.  *See United v. Klump*, 536 F.3d 113, 117-18 (2d Cir. 2008). With regard to exigent circumstances, "[t]he core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action."  *Id.* (internal quotation marks and citations omitted).

City defendants argue that summary judgment in their favor is warranted because, "upon arriving at the hotel, [Mills and Farrell] became aware of facts which could reasonably lead them to believe that [A.H. and J.H] were the victims of ongoing abuse and neglect at the hands of their parents," and because they are otherwise entitled to qualified immunity. (Dkt. No. 189, Attach. 27 at 5-8.)  Plaintiffs argue that summary judgment is warranted in their favor because "entering and searching the hotel room was *per se* unreasonable."  (Dkt. No. 196, Attach. 4 at 14.)

City defendants' motion and plaintiffs' cross-motion are both denied. Put simply, neither City defendants nor plaintiffs have met their initial burdens on summary judgment of establishing that there is no genuine issue of material fact as to the elements of this claim.  Specifically, City defendants do not cite to anything in the record in support of their motion

as to this claim, and plaintiffs' argument that Mills' and Farrell's conduct was "*per se* unreasonable" is entirely insufficient to meet their initial burden.  Further, there are issues of fact regarding, among other things, how Mills and Farrell entered the hotel room, and what was known to Mills and Farrell prior to making the decision to enter.

Accordingly, City defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment as to this claim are both denied.

### 2.    *Entering and Searching Vacant Hotel Room*

Defendants move for summary judgment as to plaintiffs' second cause of action, which is a Fourth Amendment claim for unlawful entry and search of the vacant hotel room, against Meyer, Mills, Farrell, and Strand. (Dkt. No. 188, Attach. 1 at 6-8; Dkt. No. 189, Attach. 27 at 8-9.)  Plaintiffs cross-move for summary judgment as to this claim.  (Dkt. No. 196, Attach. 2 at 8; Dkt. No. 196, Attach. 4 at 15.)

County defendants argue that summary judgment is appropriate, because "Meyer did not conduct a search of the [h]otel room; he had probable cause to enter the room; and, he should be afforded qualified immunity for his investigation of suspected child neglect."  (Dkt. No. 188,

Attach. 1 at 6.)  Plaintiffs summarily and conclusorily argue that "Meyer's conduct was *per se* unreasonable" and that all of County defendants' arguments are "erroneous."  (Dkt. No. 196, Attach. 2 at 8.)  The court agrees with County defendants, at least in so far as qualified immunity is concerned.

Qualified immunity shields government employees from liability under § 1983 in two circumstances: "(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights."  *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (internal quotation marks and alterations omitted).  This "second . . . prong provides substantial protection for [child services] caseworkers, which is necessary because protective services caseworkers must choose between difficult alternatives."  *Id.* (internal quotation marks, alterations, and citations omitted).

Meyer had an objectively reasonable basis for entering the hotel room to conduct an investigation.  Meyer received a report from the New York State Office of Children and Family Services (OCFS) of suspected neglect, "which included information concerning two children being left

unattended and unsanitary conditions in the hotel room."  (Dkt. No. 188,

Attach. 1 at 7.)  Upon arriving at the hotel, KPD officers provided Meyer

with information that was consistent with this report.  (*Id.*)  He was then

granted access to the hotel room by those officers.  (*Id.*)

Based on these facts, it is apparent that County defendants have met

their initial burden on summary judgment to establish that there is no

genuine issue of material fact that it was objectively reasonable for Meyer

to believe that entering the hotel room and conducting a preliminary

investigation did not violate plaintiffs' constitutional rights.  Thus, he is

entitled to qualified immunity as to this claim.  *See Tenenbaum v. Williams*,

193 F.3d 581, 605 (2d Cir. 1999) ("We emphasize again the importance of

the availability of qualified immunity where child welfare workers are

seeking to protect children from abuse.  If caseworkers of reasonable

competence could disagree on the legality of [a] defendant's actions their

behavior is protected." (internal quotation marks and citation omitted)).

Accordingly, County defendants' motion for summary judgment as to

this claim is granted, and plaintiffs' cross-motion for summary judgment as

to this claim against Meyer is denied.

Next, City defendants argue that summary judgment is appropriate

because Mills' and Farrell's conduct was reasonable because they were conducting a criminal investigation at the hotel room, they did not conduct a search, and there are no allegations against Strand as to this claim.  (Dkt. No. 189, Attach. 27 at 8-9.)  Plaintiffs argue that no criminal investigation had commenced until after Bowers and Negron spoke with the DAO, Mills and Farrell did conduct a search, and "Strand was grossly negligent in managing Mills and Farrell."  (Dkt. No. 196, Attach. 4 at 15.)

First, the claim against Strand is dismissed, as the only allegation against him as to this claim is the bare and conclusory statement that he was "grossly negligent in managing Mills and Farrell."  (*Id.*)  The court "[is] not bound to accept as true a legal conclusion couched as a factual allegation."  *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (citation omitted).  However, there are issues of fact as to the claim against Mills and Farrell regarding their purpose in entering the hotel room, and whether they conducted a search.  This is sufficient to defeat summary judgment against both sets of parties.

Accordingly, City defendants' motion for summary judgment is granted as against Strand, and denied as against Mills and Farrell, and

plaintiffs' cross-motion as to this claim is denied.

    *3.    False Imprisonment for Removing A.H. and J.H. from the Hospital and their Subsequent Placement into Foster Care*

Defendants move for summary judgment as to plaintiffs' third cause of action, which is a claim of false imprisonment against Meyer, Timbrouck, Mills, Farrell, Strand, and Sommer.  (Dkt. No. 188, Attach. 1 at 8-14; Dkt. No. 189, Attach. 27 at 9-11.)  Plaintiffs cross-move as to this claim.  (Dkt. No. 196, Attach. 2 at 9-10; Dkt. No. 196, Attach. 4 at 15-16.)

The elements of a false imprisonment claim under 42 U.S.C. § 1983 are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citations omitted).  Under the circumstances at bar, false imprisonment is privileged only "where there was parental consent, a court order, or where an emergency situation existed."  *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 101 (N.D.N.Y. 2013) (citation omitted).

Although the amended complaint is unclear, plaintiffs clarified that their third cause of action is based on the removal of the children at the

hospital and the subsequent placement of them into foster care.  (Dkt. No. 196, Attach. 2 at 9 n.4.)  In determining whether removal of a child without a warrant violates the Fourth Amendment, courts look to whether the "information possessed by a state officer would warrant a person of reasonable caution in the belief that a child is subject to the danger of abuse if not removed . . . before court authorization can reasonably be obtained."  *McLoughlin v. Rensselaer Cnty. Dep't of Soc. Servs.*, No. 1:18-CV-0487, 2019 WL 3816882, at *5 (N.D.N.Y. Aug. 14, 2019) (citation omitted).  "[T]he danger to the child must be sufficiently serious, such as the peril of sexual abuse, the risk that children will be left bereft of care and supervision, and immediate threats to the safety of the child."  *Id.* (internal quotation marks and citation omitted).

County defendants argue that summary judgment is appropriate as to this claim because (1) collateral estoppel bars plaintiffs' argument that no imminent risk existed at the time of the removal; (2) they had probable cause to remove the children; and (3) they are entitled to qualified immunity pursuant to the federal doctrine and the New York Social Services Law, as their actions were made in good faith and were objectively reasonable. (Dkt. No. 188, Attach. 1 at 8-14.)  Plaintiffs dispute all of County

defendants' assertions, and additionally argue that collateral estoppel actually bars County defendants from arguing that imminent risk did exist at the time of removal.  (Dkt. No. 196, Attach. 2 at 9-14.)

Section 419 of the New York Social Services Law affords immunity to "[a]ny person . . . participating in good faith in the . . . making of a report, the taking of photographs, [or] the removal or keeping of a child."  N.Y. Soc. Servs. Law § 419.  "[G]ood faith of any such person . . . required to report cases of child abuse or maltreatment . . .  shall be presumed, provided such person . . . was acting in discharge of their duties and within the scope of their employment, and that such liability did not result from . . . willful misconduct or gross negligence."  *Id.*

There are genuine issues of material fact that preclude summary judgment in favor of either party.  County defendants argue that they reasonably relied on the information they had before them when making their decision to remove the children from their parents' custody and place them into foster care.  (Dkt. No. 188, Attach. 1 at 10-11.)  However, at the time of the removal from the hospital (the basis of the third cause of action), Meyer and Timbrouck had already begun an investigation: Meyer observed the conditions of the hotel room and the children, took

27

photographs of the room, and interviewed witnesses (including A.H.); and the medical staff at the hospital had conducted examinations of the children.  And there are issues of fact as to the conditions of the children and the condition of the hotel room, and thus whether it was objectively reasonable and not at least grossly negligent for County defendants' to remove the children.

On the one hand, County defendants assert that the hotel room was in poor condition, the children were left bereft of care, and their parents were unreachable, making it objectively reasonable for them to remove the children.  (Dkt. No. 188, Attach. 1 at 12.)  On the other hand, plaintiffs argue that their actions were not objectively reasonable and were at least grossly negligent, because at the time of the removal from the hospital, "Meyer learned the . . . [OCFS] [r]eport was wrong in that no seizure occurred, J[.]H[.] did not have a disability, and A[.]H[.] was a 12-year-old girl[,] but made no effort to contact the parent as required by law."  (Dkt. No. 196, Attach. 2 at 10.)  Further, plaintiffs argue that Meyer and Timbrouck had "ample time to secure a court order, call the parents, or file an emergency removal petition . . . [, but they] [i]nstead . . . removed the children from the hospital against their will."  (*Id.*)

Accordingly, County defendants' motion for summary judgment as to this claim, and plaintiffs' cross-motion for summary judgement are both denied.[11]  *See Southerland v. City of New York*, 680 F.3d 127, 150, 161 (2d Cir. 2012) (finding, in a case involving a child's removal from their parents' custody, that summary judgment was not appropriate as to the plaintiffs' Fourth Amendment seizure claim, because there were issues of fact as to whether "defendants had sufficient time to obtain a court order, [and whether] the circumstances in which [defendant] found the children . . . warrant[ed] their removal at all").

Next, City defendants argue that summary judgment is appropriate because they were "acting in the good faith discharge of their duties [as police officers]," and their actions were objectively reasonable, entitling them to immunity pursuant to the New York State Social Services Law and the qualified immunity doctrine.  (Dkt. No. 189, Attach. 27 at 9-11.) Plaintiffs argue that "[t]here was no probable cause or [objectively] reasonable belief that the children were abused or neglected or in imminent

---

[11]  County defendants and plaintiffs both assert that collateral estoppel should be applied in their favor as to the same issue (*i.e.*, whether the children were in imminent risk at the time of their removal) based on two different rulings from Judge McGinty.  (Dkt. No. 188, Attach. 1 at 8-9; Dkt. No. 196, Attach. 2 at 4-5.)  The court declines to resolve this issue given the apparently inconsistent rulings.

danger so their confinement at [the] hotel and [the] hospital was not privileged."  (Dkt. No. 196, Attach. 4 at 16.)  Plaintiffs further argue that City defendants' conduct was done in bad faith to "coverup" their earlier wrongdoings.  (*Id.* at 30.)

Evidentiary support is lacking in both City defendants' motion and plaintiffs' cross-motion as to this claim, and, in any event, neither party has met their initial burden on summary judgment.  There are issues of fact as to whether City defendants had authority over the removal of the children from the hospital, and whether that decision was privileged and made in good faith.  City defendants and plaintiffs disagree as to the condition of the hotel room, the condition of the children, and whether reasonable attempts at contacting the parents had been made.

Accordingly, City defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment is denied.

4.     *Removing A.H. from Parents' Custody at the Hotel*

Defendants move for summary judgment as to plaintiffs' fifth cause of action, which is a Fourth Amendment claim based on defendants' removal of A.H. and J.H. from their parents' custody, against Meyer, Timbrouck, Mills, Farrell, Sommer, and Strand.  (Dkt. No. 188, Attach. 1 at 8-14; Dkt.

No. 189, Attach. 27 at 14-15.)  Plaintiffs cross-move for summary judgment as to this claim.  (Dkt. No. 196, Attach. 2 at 10-14; Dkt. No. 196, Attach. 4 at 17.)  In response to County defendants' motion for summary judgment, plaintiffs clarified that their fifth cause of action is "based on the seizure that was decided at 5:40PM followed by the physical removal of the children at about 6:11PM."  (Dkt. No. 196, Attach. 2 at 9 n.4.)

County defendants argue that summary judgment is appropriate for the same reasons they argued that summary judgment was appropriate as to plaintiffs' false imprisonment claim.  (Dkt. No. 188, Attach. 1 at 8-14.)  In addition, County defendants argue that Meyer and Timbrouck were not involved in the initial decision to remove the children from the hotel.  (Dkt. No. 197 at 4 n.2.)  Plaintiffs argue that "[n]o objectively reasonable investigation could have taken place in the five minute period of time it took Meyer to speak with Strand, convey what he knew to Timbrouck, and get instructions from Timbrouck to join in the KPD removal, take custody of the children and remove the children from the hospital."  (Dkt. No. 196, Attach. 2 at 11.)  Plaintiffs further argue that the children were not in imminent risk and thus defendants were not justified in the removal.  (*Id.* at 12-14.)

As noted above, this claim is based on the seizure that allegedly occurred at the hotel between 5:40P.M. and 6:11P.M.  (Dkt. No. 196, Attach. 2 at 9 n.4.)   But, by plaintiffs' own admissions, Meyer and Timbrouck did not have any participation in the events leading up to this case until after the children had been removed from the hotel and were on their way to the hospital.  (Pls. SMF ¶¶ 14, 25-26, 31.)  Accordingly, even assuming that Meyer and Timbrouck did "join" KPD in the children's removal from the hotel, they are entitled to qualified immunity as to this claim.

As noted throughout this Memorandum-Decision and Order, qualified immunity "provides substantial protection for [child services] caseworkers, which is necessary because protective services caseworkers must choose between difficult alternatives."  *Cornejo*, 592 F.3d at 128 (internal quotation marks, alterations, and citations omitted.)  And New York Social Services Law affords immunity to "[a]ny person . . . participating in good faith in the . . . making of a report, the taking of photographs, [or] the removal or keeping of a child."  N.Y. Soc. Servs. Law § 419.

Although, Meyer and Timbrouck are not entitled to immunity for the removal of the children from the hospital and the subsequent placement of

32

them into foster care, they are entitled to immunity for the alleged removal

of the children from the hotel.  It is undisputed that at the time of the

children's removal from the hotel to the hospital, Meyer and Timbrouck had

not been involved in the events leading up to this case.  (Pls. SMF ¶¶ 14,

25-26, 31.)  Further, the actions these individuals took that plaintiffs' claim

constitute joining in on the removal were objectively reasonable and made

in good faith.  Specifically, Meyer received a report of suspected neglect

from OCFS and KPD, which caused him to reasonably open an

investigation, interview the witnesses, take photographs of the room, and

leave a notice at the hotel that the children were in the custody of Ulster

County.  It was not until the preliminary investigation was conducted by

Meyer that issues of fact arise as to whether Meyer's and Timbrouck's

decision to remove the children from the hospital and place them into foster

care (the basis of the third cause of action) was objectively reasonable and

not at least grossly negligent.  *See supra* Section IV.B.3.

Thus, Meyer's and Timbrouck's actions as to this claim were

objectively reasonable and were made in good faith, entitling them to

qualified immunity and immunity under the New York Social Services Law.

*See Thomas v. Digglio*, No. 15 Civ. 3236, 2016 WL 7378899, at *12

(E.D.N.Y. Dec. 20, 2016) (finding that defendant caseworkers who removed children from their home were entitled to qualified immunity because "[a]t most, plaintiff [was] arguing that the caseworkers should have done a more thorough investigation, but that is a simple negligence claim, not the kind of willful or reckless indifference that overcomes qualified immunity").

Accordingly, County defendants' motion for summary judgment as to this claim is granted, and plaintiffs' cross-motion is denied.

Next, City defendants argue that summary judgment is appropriate as to this claim because they "had no authority whatsoever" with respect to the decision to remove A.H. and J.H. from their parents' custody.  (Dkt. No. 189, Attach. 27 at 14.)  Plaintiffs argue that "Mills and Farrell obtained approval from Strand to remove the children" even though "[n]o KPD officer considered the children in imminent danger."  (Dkt. No. 196, Attach. 4 at 17.)

First, there are no allegations or argument as to Sommer's involvement in the underlying facts of this claim, and thus the claim against her must be dismissed.  However, as to Mills, Farrell, and Strand, there are genuine issues of material fact that preclude summary judgment.  In

response to plaintiffs' cross-motion, City defendants renew their argument that KPD had no authority over the removal of the children either at the hotel or at the hospital, and, in addition, argue that there was probable cause to believe that the children were in imminent risk and needed to be removed.  (Dkt. No. 198 at 17-19.)  Accordingly, there are issues of fact as to whether KPD wielded any authority over the removal of the children, and, as stated throughout this Memorandum-Decision and Order, there are issues of fact as to whether the children needed to be removed (*i.e.*, issues regarding the condition of the children, the condition of the hotel room, and whether attempts to contact Hardaway and Callwood were made).

Accordingly, City defendants' motion for summary judgment as to this claim against Sommer is granted, but denied as against Mills, Farrell, and Strand, and plaintiffs' cross-motion for summary judgment as to this claim is denied.

> 5.    *Medical Examinations of A.H. and J.H.*

City defendants move for summary judgment as to plaintiffs' fourth and seventh causes of action, which are Fourth Amendment claims based on the medical examinations of A.H. and J.H. that were conducted at the hotel room and at the hospital, against Mills, Farrell, Strand, and Sommer.

(Dkt. No. 189, Attach. 27 at 13-14.)  Plaintiffs cross-move for summary judgment as to these claims.  (Dkt. No. 196, Attach. 4 at 16-17, 19.)

When a medical examination "was undertaken at the initiative of a state official [and] serve[d] primarily an investigative function . . . Fourth Amendment and bodily integrity interests of the child are implicated." *Tenenbaum*, 193 F.3d at 606 (internal quotation marks and citations omitted).  In such cases, and "in the absence of a warrant equivalent, in order for the examination to have been constitutional, reasonable or probable cause or exigent circumstances justifying an emergency examination must have existed at the time the examination was performed."  *Id.*

City defendants argue that Mills, Farrell, Strand, and Sommer were acting in "immediate response to exigent circumstances" when they called an ambulance for A.H. and J.H. after they saw the conditions of the children and the hotel room in which they resided.  (Dkt. No. 189, Attach. 27 at 13-14.)  Plaintiffs argue that the medical examinations took place without parental consent, a court order, or exigent circumstances, and "[n]o witness believed the children were in need of an ambulance or required medical treatment."  (Dkt. No. 196, Attach. 4 at 16-17, 19.)

36

Although it is undisputed that the medical examinations were conducted without parental consent or court order, there are issues of fact as to the conditions of the children and the hotel room, and as to the purpose of the examinations (*i.e.*, for investigatory purposes or to merely check the welfare of the children).  Accordingly, both motions for summary judgment are denied.  *See Tenenbaum*, 193 F.3d at 599 (holding that an examination was not medically indicated where it was ordered by a social worker investigating sexual abuse even though it was also meant to uncover possible injuries); *McLoughlin*, 2019 WL 3816882, at *8 (upholding a Fourth Amendment medical examination claim because the court could not "agree [with the defendants] that it was objectively reasonable to believe . . . that 'probable cause' or 'exigent circumstances' warranting an emergency examination existed at the time [of the examination]").

   *6.    Interview of A.H.*

Defendants move for summary judgment as to plaintiffs' sixth cause of action, which is a Fourth Amendment claim for the allegedly unlawful custodial interview of A.H. in the hotel room and the hospital, against Meyer, Timbrouck, Mills, Farrell, Strand, and Sommer.  (Dkt. No. 188, Attach. 1 at 14-15; Dkt. No. 189, Attach. 27 at 15-16.)  Plaintiffs' cross-

move for summary judgment as to this claim.  (Dkt. No. 196, Attach. 2

at 14-16; Dkt. No. 196, Attach. 4 at 17-18.)

It is well settled that "the Fourth Amendment applies in the context of

the seizure of a child by a government agency official during a civil

child-abuse or maltreatment investigation."  *Emanuel v. Griffin*, No. 13-CV-

1806, 2015 WL 1379007, at *13 (S.D.N.Y. Mar. 25, 2015) (citation omitted).

A "seizure" occurs where, "in view of all of the circumstances surrounding

the incident, a reasonable person would have believed that he was not free

to leave."  *Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir. 2000) (citation

omitted).

County defendants argue that summary judgment is appropriate as to

this claim, because Meyer and Timbrouck had probable cause and a

reasonable basis to interview A.H. based on the reports they received from

OCFS and KPD of suspected neglect, and because they are otherwise

entitled to qualified immunity.  (Dkt. No. 188, Attach. 1 at 14-15.)  Plaintiffs

argue that summary judgment is appropriate in their favor because the

children were healthy, there were no signs of abuse, and neither Meyer nor

Timbrouck attempted to contact Hardaway or Callwood.  (Dkt. No. 196,

Attach. 2 at 14-16.)  The court agrees with County defendants, at least in

so far as qualified immunity is concerned. .

First, plaintiffs' do not set forth any allegations or argument regarding Timbrouck's involvement in the facts that give rise to this claim.  (*Id.*) Indeed, in their amended complaint, they allege only that "[t]he custodial interview of A.H. in the hotel room and hospital room by defendants *Meyer, Mills, and Farrell* constituted an unlawful Fourth Amendment violation seizure." (Am. Compl. ¶ 136 (emphasis added).)  Accordingly, the claim must be dismissed against Timbrouck.

Next, Meyer is entitled to qualified immunity as to this claim for essentially the same reasons as explained in the court's discussion above regarding plaintiffs' second cause of action.  Specifically, Meyer received a report of suspected neglect from OCFS and KPD, which caused him to open an investigation, a necessary part of which was interviewing A.H., and there is no evidence that Meyer took any of his actions in bad faith.

Based on these facts, which plaintiffs do not adequately dispute, Meyer is entitled to qualified immunity as to this claim.  *See Phillips v. County of Orange*, 894 F. Supp. 2d 345, 377, 388 (S.D.N.Y. 2012) ("[W]hile Plaintiffs view the basis for the interview of [the minor] as flimsy . . . even Plaintiffs acknowledge that those who interviewed [the minor] did so

39

because of some information (however unreliable it later proved to be) of

harm inflicted on [the minor] by the Parent Plaintiffs. . . . [I]t was not

unreasonable for [caseworkers] to believe that their conduct in interviewing

[the minor] at her school without parental consent did not violate her Fourth

Amendment rights, and they are entitled to qualified immunity against that

claim.").

Accordingly, County defendants' motion for summary judgment as to

this claim is granted, and plaintiffs' cross-motion is denied.

City defendants argue that summary judgment is appropriate as to

this claim, because they were legally justified in interviewing A.H., as the

questions were solely focused on the location of her parents and whether

she was abused and/or neglected, and because they are otherwise entitled

to qualified immunity.  (Dkt. No. 189, Attach. 27 at 15-16.)  Plaintiffs argue

that Mills' and Farrell's questions were unreasonable and repetitive, and

that A.H. was never in danger, there were no signs of abuse or neglect,

and Mills and Farrell caused the poor condition of the hotel room.  (Dkt.

No. 196, Attach. 4 at 17-18.)

First, as stated above, in their amended complaint, plaintiffs allege

only that "[t]he custodial interview of A.H. in the hotel room and hospital

room by defendants *Meyer, Mills, and Farrell* constituted an unlawful Fourth Amendment violation seizure." (Am. Compl. ¶ 136 (emphasis added).) Plaintiffs have not set forth any allegations or arguments regarding Strand as to this claim, and only one minimal, insufficient argument regarding Sommer. (Dkt. No. 196, Attach. 4 at 17-18.) Accordingly, the claim must be dismissed against them.

The facts giving rise to this claim as against Mills and Farrell necessitate a different result from the conclusion made above regarding the claim against Meyer. As noted throughout this Memorandum-Decision and Order, plaintiffs allege that Mills and Farrell fabricated evidence, that the condition of the room was due to Mills and Farrell's search, that the children showed no signs of abuse or neglect, and that they made no attempt at contacting the parents. Contrary to the allegations against Meyer, plaintiffs set forth sufficient evidence that Mills and Farrell knew that there was no reasonable basis to seize A.H. for an interview (*i.e.*, as opposed to Meyer who arrived on scene after the seizure by KPD, Mills and Farrell are alleged to have caused the seizure), and thus there are genuine issues of fact sufficient to defeat summary judgment as to this claim against them.

Accordingly, City defendants' motion for summary judgment as to this claim is granted as against Strand and Sommer, but denied as against Mills and Farrell.  And plaintiffs' cross-motion for summary judgment as to this claim is denied.

## C.   **First Amendment Retaliation**

### 1.   *Retaliation on A.H.*

City defendants' move for summary judgment as to plaintiffs' eighth cause of action, which is a claim of First Amendment retaliation on behalf of A.H., against Mills, Farrell, Strand, and Sommer.  (Dkt. No. 189, Attach. 27 at 16-17.)  To state a First Amendment retaliation claim, a plaintiff must show that: "(1) [s]he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused [the plaintiff] some injury."  *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (citation omitted).

Plaintiffs argue that defendants retaliated against A.H. for statements she made to defendants about the alleged unconstitutionality of their entry into the hotel room, by searching the room and removing her from the room.  (Dkt. No. 196, Attach. 4 at 19-20.)  City defendants argue that their

42

actions were taken as a result of the existence of probable cause because the children were in imminent risk of harm, and not because of any statements A.H. made to them.  (Dkt. No. 189, Attach. 27 at 16-17.) Plaintiffs' claim of retaliation on A.H. fails, because they have not sufficiently alleged or factually established that defendants' actions were motivated or substantially caused by A.H.'s statements.  *See Williams v. King*, 763 F. App'x 36, 38-39 (2d Cir. 2019) ("The only evidence demonstrating a retaliatory motive is temporal proximity which, alone, is insufficient to defeat summary judgment.").

Accordingly, City defendants' motion for summary judgment as to plaintiffs' claim of retaliation on A.H. is granted, and that claim is dismissed against all remaining defendants.

### 2.   *Retaliation on Hardaway*

Defendants also move for summary judgment as to plaintiff's ninth cause of action, which is a claim of First Amendment retaliation on behalf of Hardaway against Joern, Stitt, Mills, Bowers, and Negron.  (Dkt. No. 188, Attach. 1 at 15-17; Dkt. No. 189, Attach. 27 at 17-18.)  For the following reasons, the claim is dismissed against Joern, Mills, Bowers, and Negron, but survives against Stitt.

First, the court previously held that, aside from an alleged Facebook post that Joern made regarding the arrests of Hardaway and Callwood, Joern is entitled to absolute prosecutorial immunity for her actions.  (Dkt. No. 110 at 16-17.)  County defendants argue that Joern did not make any Facebook post disparaging plaintiffs, but that, even if she did, she did not make such post under color of law, and plaintiffs did not suffer any harm or chilled speech as a result of the post.  (Dkt. No. 188, Attach. 1 at 16.)  The court agrees with the latter portion of County defendants' argument.

Plaintiffs confirm that their retaliation claim against Joern is based on the alleged Facebook post, but they have not established that the post—which notably has not, and presumably cannot, be provided to the court in admissible form—caused Hardaway to suffer an injury, or chilled his speech.  Accordingly, County defendants' motion for summary judgment as to plaintiffs' claim of First Amendment retaliation on Hardaway is granted, as against Joern, and that claim is dismissed.  *See Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 679 (E.D.N.Y. 2017), *aff'd*, 726 F. App'x 37 (2d Cir. 2018) (granting summary judgment as to the plaintiff's First Amendment retaliation claim because she "failed to establish that she suffered any concrete harm as a result of Defendants' contacting

44

CPS").

Next, plaintiffs' retaliation claim against Stitt is based on allegations that Stitt created false information about Hardaway and withheld exculpatory evidence about him after Hardaway said that defendants' actions were unlawful.  (Dkt. No. 196, Attach. 2 at 17.)  County defendants argue that the claim should be dismissed against Stitt because plaintiffs have not established that Stitt directed the arrest of Hardaway or that the arrest was in retaliation of Hardaway's speech.  (Dkt. No. 188, Attach. 1 at 17.)  In deciding County defendants' motion to dismiss, the court held that, accepting plaintiffs' allegations as true, Stitt's actions constitute First Amendment retaliation.  (Dkt. No. 110 at 23-24.)  Now, on summary judgment, there is an issue of material fact with respect to County defendants' argument.  On the one hand, City defendants and plaintiffs both allege that the DAO directed Hardaway's arrest.  (City Defs.' SMF ¶ 59; Pls.' SMF ¶ 58.)  And, on the other hand, County defendants allege that the decision to arrest Hardaway was solely made by KPD.  (County Defs.' SMF ¶¶ 57-61.)

Accordingly, County defendants' motion for summary judgment as to plaintiffs' claim of First Amendment retaliation on Hardaway, as against

45

Stitt, is denied.

Finally, plaintiffs' claim against Mills, Bowers, and Negron is based on allegations that Mills retaliated against Hardaway by "most likely" removing "rebuttal evidence" from Hardaway's briefcase, and that Negron retaliated against Hardaway by "obey[ing] Culmone-Mills['] instructions to hold the parents [in jail] overnight."  (Dkt. No. 196, Attach. 4 at 21.)  Plaintiffs do not make any specific allegations or argument as to Bowers.  (*Id.* at 21-22.)

Although City defendants' motion is one for summary judgment, plaintiffs' allegations are wholly insufficient to maintain this claim. Specifically, the only allegation to support this claim against Negron is that he "obeyed Culmone-Mills['] instructions to hold the parents overnight." (Dkt. No. 196, Attach. 4 at 21.)  It is difficult to understand how Negron can be said to have retaliated against Hardaway by merely following the decision made by somebody else, especially because the decision at issue here (*i.e.*, whether to recommend bail or not) is one "at the core of the prosecutorial function," *see Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012), and was made by prosecutors.  Further, the assertion that Mills "most likely" stole documents is insufficient to maintain this claim as against him.  Moreover, there is no evidence or specific factual allegations

46

establishing that any of the defendants' actions were motivated by
Hardaway's statements.

Accordingly, City defendants' motion for summary judgment as to
plaintiffs' claim of First Amendment retaliation on behalf of Hardaway is
granted, and that claim is dismissed as against Mills, Bowers, and Negron.

**D.    Abuse of Process**

Defendants move for summary judgment as to plaintiffs' tenth,
eleventh, and twelfth causes of action, which are claims of abuse of
process arising out of the various family court proceedings, against Joern,
Meyer, Greene, Webb, Mills, and Farrell.  (Dkt. No. 188, Attach. 1 at 18-19;
Dkt. No. 189, Attach. 27 at 18-19.)

It is well settled that "section 1983 liability may not be predicated on a
claim of malicious abuse of civil process."  *Green v. Mattingly*, 585 F.3d 97,
104 (2d Cir. 2009) (internal quotation marks, alterations, and citation
omitted).  The court noted this Second Circuit rule in its order on County
defendants' motion to dismiss, (Dkt. No. 110 at 32), and County
defendants' advanced an argument based on this rule in their motion for
summary judgment, (Dkt. No. 188, Attach. 1 at 18-19.)  Despite this,
plaintiffs did not make any argument as to why the rule does not apply to

47

their claims, which are all based on civil proceedings.  (*See generally* Dkt. No. 196, Attachs. 2, 4.)  And, although abuse of process claims based on civil proceedings may be brought under state law, *see Keller v. Schoharie Cty. Dep't of Soc. Servs.*, No. 1:19-CV-662, 2020 WL 1493916, at *6 (N.D.N.Y. Mar. 27, 2020), plaintiffs' amended complaint makes clear that their claims are brought pursuant to 42 U.S.C. § 1983.  (Am. Compl. ¶¶ 143-48.)

Accordingly, defendants' motions for summary judgment as to plaintiffs' abuse of process claims are granted, and the claims are dismissed against all remaining defendants.

## E.   **False Arrest**

City defendants move for summary judgment as to plaintiffs' thirteenth cause of action, which is a claim of false arrest pursuant to 42 U.S.C. § 1983 against Mills, Bowers, Negron, and Strand.  (Dkt. No. 189, Attach. 27 at 11-13.)

To prevail on a false arrest claim, a plaintiff has to prove the following: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."

*Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (citation omitted).  "Probable cause is a complete defense to an action for false arrest."  *Id.* (internal quotation marks and citation omitted).  "A police officer has probable cause for an arrest when he has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (internal quotation marks and citation omitted).

City defendants argue that summary judgment is appropriate because they had probable cause to arrest Hardaway and Callwood, and because they are otherwise entitled to qualified immunity.  (Dkt. No. 189, Attach. 27 at 11-13.)  Plaintiffs argue that probable cause did not exist because the direction of the DAO to arrest Hardaway and Callwood was based on fabricated evidence.  (Dkt. No. 196, Attach. 4 at 22-23.)  The court agrees, in part, with City defendants.

"Qualified immunity is a complete defense to false arrest claims.  An arresting officer is entitled to qualified immunity even when . . . probable cause to arrest does not exist, if he can establish that there was arguable

49

probable cause to arrest." *Ackerson*, 702 F.3d at 21 (internal quotation marks and citation omitted).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (citation omitted).  However, "[i]f officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).

Courts in this circuit have granted summary judgment against defendant police officers when their allegedly unlawful conduct was directed by a district attorney's office.  *See, e.g.*, *Barboza v. D'Agata*, 151 F. Supp. 3d 363, 373 (S.D.N.Y. 2015) (finding that defendant police officers were entitled to qualified immunity when a prosecutor prompted the officers to make the arrest, and told them that the prosecutor's supervisor approved the charges, finding that "the officers could hardly be expected to refuse the [prosecutor's] request or instructions").  However, "[a]n officer is not automatically entitled to qualified immunity simply because prosecutors . . . approve a challenged arrest; he can still be subject to suit if 'it is obvious

that no reasonably competent officer would have concluded' that a lawful arrest could be made."  *Barboza v. D'Agata*, 676 F. App'x 9, 15 (2d Cir. 2017) (citation omitted).  "[T]he threshold for establishing this exception is a high one."  *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).

First, there are no allegations of any personal involvement on the part of Strand as to this claim, and thus the claim against him must be dismissed.  *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (noting that personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to a finding of liability under § 1983).

Next, the claim against Bowers and Negron must also be dismissed, because there is no issue of fact between City defendants and plaintiffs that the DAO directed and/or ordered the arrests of Hardaway and Callwood.  (City Defs.' SMF ¶ 59; Pls.' SMF ¶ 58.)  Indeed, plaintiffs argue that this direction was made before KPD even commenced a criminal investigation.  (Dkt. No. 196, Attach. 4 at 10.)  Further, by plaintiffs' own admissions, Bowers and Negron had no involvement in this case until the DAO called them and directed them to make the arrest.  (Pls. SMF ¶¶ 56-60.)  And plaintiffs have not proffered any evidence to establish that Bowers or Negron had any knowledge of Mills' alleged evidence

fabrication.  Thus, Bowers and Negron had at least arguable probable

cause, and they are entitled to qualified immunity as to this claim.  *See*

*Barboza*, 151 F. Supp. 3d at 373.

However, Mills is not entitled to qualified immunity because there are

issues of fact as to whether Mills fabricated evidence to prosecutors, and,

thus, whether it was objectively reasonable for him to believe a lawful

arrest could be made.  *See Barboza*, 676 F. App'x at 15.  In other words,

Mills could not have reasonably relied on the DAO's direction to arrest

Hardaway and Callwood, because he is alleged to have fabricated the

evidence that served as the basis for this direction in the first place.

Accordingly, City defendants' motion for summary judgment as to

plaintiffs' false arrest claim is granted as against Bowers, Negron, and

Strand, but denied as against Mills.

## F.    Deliberate Indifference to Serious Medical Needs

City defendants move for summary judgment as to plaintiffs'

fourteenth cause of action, which is an Eighth Amendment deliberate

indifference to serious medical needs claim against Mills, Bowers, Negron,

and Strand.  (Dkt. No. 189, Attach. 27 at 19-20.)  "The standard to establish

a claim of deliberate indifference to serious medical needs has two prongs:

The plaintiff must show (1) that he had an objectively 'serious medical condition,' and (2) that this condition was met with subjective 'deliberate indifference' on the part of the defendants."  *Goodwin v. Kennedy*, No. CV 13-1774, 2015 WL 1040663, at *11 (E.D.N.Y. Mar. 10, 2015) (some internal quotation marks and citations omitted).

To establish an objectively "serious medical condition," "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted).  In evaluating such a condition, a court should consider relevant factors, including "(i) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment"; (ii) "whether the medical condition significantly affects daily activities"; and (iii) "the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (internal quotation marks and citations omitted).  To show deliberate indifference to a serious medical condition, a plaintiff must show the defendant "knows of and disregards an excessive risk to [the plaintiff's] health or safety; [the defendant] must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiffs have proffered evidence to show that Hardaway had a condition that, without constant medication, puts him at a serious risk of stroke or death; that he requested medical attention on a number of occasions; that those requests were denied; and that Bowers told Mills that Hardaway was "faking" his illness.  (Dkt. No. 196, Attach. 4 at 23-24.)  On the other hand, City defendants have not offered any evidence to disprove these allegations, and, instead, rely on a general argument that plaintiffs have not offered the requisite proof.  (Dkt. No. 189, Attach. 27 at 19-20.)

Accordingly, City defendants have not met their initial burden of establishing that there is no genuine issue of material fact as to plaintiffs' claim of deliberate indifference to serious medical needs, and thus, City defendants' motion for summary judgment as to that claim is denied.

## G.    Denial of a Right to a Fair Trial

Defendants move for summary judgment as to plaintiffs' fifteenth cause of action, which is a claim of a denial of a right to a fair trial against Stitt, Culmone-Mills, Mills, Bowers, and Negron.  (Dkt. No. 188, Attach. 1 at 19-21; Dkt. No. 189, Attach. 27 at 20-21.)  Plaintiffs' fair trial claim is

based on allegations that defendants withheld exculpatory evidence from the DAO and forwarded fabricated evidence, false sworn statements, and perjured testimony to the DAO.  (Am. Compl. ¶ 154.)

In order to maintain a fair trial claim based on fabrication of information, plaintiffs must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citation omitted).  In order to maintain the claim against a police officer, plaintiffs must show "that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision."  *Id.* at 280 (citation omitted).

County defendants argue that summary judgment is appropriate because Culmone-Mills and Stitt did not direct the arrest of Hardaway and Callwood; Culmone-Mills is entitled to absolute prosecutorial immunity; Stitt's investigative findings were not considered in the prosecution of Hardaway and Callwood; and Stitt is entitled to qualified immunity.  (Dkt. No. 188, Attach. 1 at 19-21.)  Plaintiffs argue that Culmone-Mills and Stitt

55

fabricated evidence, and that Stitt withheld exculpatory evidence.  (Dkt. No. 196, Attach. 2 at 21-22.)

First, Culmone-Mills is entitled to absolute prosecutorial immunity, and thus plaintiffs' fair trial claim must be dismissed as against her.  *See Bruno v. City of New York*, No. 17 Civ. 7552, 2019 WL 690340, at *11 n.9 (S.D.N.Y. Feb. 19, 2019) (dismissing a fair trial claim against prosecutors because "the alleged falsification of evidence and the coercion of witnesses . . . have been held to be prosecutorial activities for which absolute immunity applies" (internal quotation marks and citations omitted)); *Watson v. Grady*, No. 09-CV-3055, 2010 WL 3835047, at *16 (S.D.N.Y. Sept. 30, 2010) ("[Prosecutor defendants] are protected by absolute immunity for their professional evaluation of the evidence and subsequent decision to indict Plaintiff on various charges.").

On the other hand, Stitt is not entitled to immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  County defendants have not established that qualified immunity applies to Stitt.

Plaintiffs set forth evidence that Stitt violated plaintiffs' rights by intentionally fabricating evidence and withholding exculpatory evidence. (Pls.' SMF ¶¶ 87-95.)  Further, contrary to County defendants' assertion, plaintiffs have demonstrated the existence of genuine issues of fact as to whether Stitt's investigation was considered in the prosecution.  (Dkt. No. 196, Attach. 2 at 24.)  This is sufficient to defeat summary judgment. Accordingly, County defendants' motion for summary judgment as to plaintiffs' claim of denial of a right to a fair trial as against Stitt is denied.

Next, City defendants summarily argue that summary judgment is appropriate because there is no support in the record that either Mills, Bowers, or Negron fabricated evidence or withheld exculpatory evidence. (Dkt. No. 189, Attach. 27 at 20-21.)  Plaintiffs argue that "Mills fabricated information and placed it in a spurious criminal complaint which Mills, Negron, and Bowers signed."  (Dkt. No. 196, Attach. 4 at 24.)

City defendants' motion as to this point is essentially a 12(b)(6) motion to dismiss, which has not been waived.  *See* Fed. R. Civ. P. 12(h). Plaintiffs have set forth sufficient allegations to maintain this claim as against Mills, but not as against Bowers and Negron.  Plaintiffs set forth sufficient allegations and record support to show that Mills fabricated

evidence and that the evidence was forwarded to prosecutors in order to have Hardaway and Callwood arrested.  (Dkt. No. 196, Attach. 4 at 24-25.) But, as to Bowers and Negron, the only allegation is that these defendants signed the complaint, and not that they fabricated evidence or knew that evidence in the criminal complaint was fabricated.  (*Id.*)

Accordingly, City defendants' motion for summary judgment is granted as against Bowers and Negron, but denied as against Mills.

## H.   <u>Malicious Prosecution</u>

Defendants move for summary judgment as to plaintiffs' sixteenth and seventeenth causes of action, which are claims of malicious prosecution pursuant to 42 U.S.C. § 1983 and New York state law, respectively, against Stitt, Culmone-Mills, Mills, Bowers, and Negron.  (Dkt. No. 188, Attach. 1 at 21-23; Dkt. No. 189, Attach. 27 at 21-22.)

The elements of a malicious prosecution claim under both Section 1983 and New York State law are: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor."  *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (citation omitted).  With regard to the second

element of a malicious prosecution claim, the probable cause standard for prosecution and for arrests are not the same: "probable cause to prosecute consists of 'facts and circumstances [that] would lead a reasonably prudent person to believe the plaintiff guilty.'" *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 611 (E.D.N.Y. 2017) (citation omitted); *see Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) ("The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." (alteration and citation omitted)).

"[I]n order for an individual to 'initiate' a prosecution . . . it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000); *see Manganiello*, 612 F.3d at 163 (finding a detective initiated the plaintiff's prosecution where he actively participated in the investigation and regularly collaborated with the prosecutor in an effort to ultimately bring criminal charges); *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) ("[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or

when she withholds relevant and material information." (internal quotation marks and citation omitted)); *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (finding police officers initiated criminal proceedings where they had the plaintiff arraigned, filled out complaining and corroborating affidavits, and signed felony complaint).

County defendants argue that summary judgment is appropriate because there was probable cause to prosecute plaintiffs; Culmone-Mills is entitled to absolute prosecutorial immunity; Stitt's investigation was not considered in determining whether to prosecute plaintiffs; and Stitt is entitled to qualified immunity.  (Dkt. No. 188, Attach. 1 at 21-23.)  Plaintiffs argue that Stitt's investigation was indeed considered in the prosecution, and that Stitt fabricated evidence, withheld exculpatory evidence, and showed malice by calling Callwood's religion a "cult."  (Dkt. No. 196, Attach. 2 at 22-24.)  Plaintiffs also summarily argue that Culmone-Mills brought a "sham prosecution" against plaintiffs.  (*Id.* at 23.)

First, as noted above, Culmone-Mills is entitled to absolute prosecutorial immunity, and thus the malicious prosecution claims must be dismissed against her.  *See Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) ("Plaintiff's claims against [a prosecutor], which encompass activities

involving the initiation and pursuit of prosecution [including fabricating evidence and suborning perjury], are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality."); *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("Because the immunity attaches to the official prosecutorial function and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless [she] proceeds in the clear absence of all jurisdiction." (internal quotation marks and citation omitted)).

However, County defendants have not established that qualified immunity applies to Stitt.  Plaintiffs set forth evidence that Stitt violated plaintiffs' rights by intentionally fabricating evidence and withholding exculpatory evidence, and that Stitt showed malice by calling Callwood's religion a "cult."  (Dkt. No. 196, Attach. 2 at 22-24.)  Further, contrary to County defendants' assertion, plaintiffs have shown the existence of genuine issues of fact as to whether Stitt's investigation was considered in the prosecution.  (*Id.*)  This is sufficient to defeat summary judgment. Accordingly, County defendants' motion for summary judgment as to the malicious prosecution claims against Stitt is denied.

Next, City defendants argue that summary judgment is appropriate because "[p]laintiffs cannot demonstrate a lack of probable cause or actual malice with respect to their arrests and subsequent prosecution." (Dkt. No. 189, Attach. 27 at 21.)  This attempt to shift the burden on plaintiffs is insufficient to meet their initial burden on summary judgment.  And, in any event, plaintiffs have set forth evidence to establish genuine issues of material fact as to whether probable cause existed and whether City defendants demonstrated actual malice.  Specifically, plaintiffs have set forth evidence that Mills was hostile towards plaintiffs; that Mills used a racial slur; that Bowers and Negron ignored and excused Mills' hostility; that Bowers and Negron ignored exculpatory evidence; and that Bowers used profanity towards Callwood.  (Dkt. No. 196, Attach. 4 at 25-27.)  Although these facts may not ordinarily establish a malicious prosecution claim, as mentioned above, City defendants' moving argument, which is not supported by specific facts or evidence, is insufficient to meet their initial burden on summary judgment.  Accordingly, City defendants' motion for summary judgment as to plaintiffs' malicious prosecution claims is denied.

I.    **Fourteenth Amendment Claims**

1.    *Substantive Due Process*

City defendants move for summary judgment as to plaintiffs'
eighteenth cause of action, which is a claim of substantive due process
against Mills, Farrell, Strand, and Sommer.  (Dkt. No. 189, Attach. 27 at 22-
23.)  "Substantive due process protects individuals against government
action that is arbitrary, conscience-shocking, or oppressive in a
constitutional sense, but not against government action that is 'incorrect or
ill-advised.'"  *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citations
omitted).  "To establish a violation of substantive due process rights, a
plaintiff must demonstrate that the state action was 'so egregious, so
outrageous, that it may fairly be said to shock the contemporary
conscience.'"  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d
415, 431 (2d Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S.
833, 847 n. 8 (1998)).

First, as explained in the court's decision on County defendants'
motion to dismiss, (Dkt. No. 110 at 26), plaintiffs' substantive due process
claim must be dismissed because it violates Rule 8(a)(2).  The claim does
not specify which actions violate substantive due process, which
defendants are responsible, whose rights were violated, or even which

63

substantive due process rights are at issue.  (Am. Compl. ¶ 160.)  The only

factual content supporting the claim is a reference incorporating the

previous 158 paragraphs, and "[s]uch general allegations, without

supporting facts other than a clause incorporating an entire complaint by

reference, are insufficient to withstand even a motion to dismiss because

they do not give fair notice of what the claim is and the grounds upon which

it rests."  *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268-69

(S.D.N.Y. 2010) (internal quotation marks and citation omitted); *see United

States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 n.75

(E.D.N.Y. 2007) ("[I]t is not the duty of the defendants or this [c]ourt to sift

through the [c]omplaint and guess which factual allegations support which

claims." (citation omitted)).

Moreover, plaintiffs' substantive due process claim is subject to

dismissal for the independent reason that "where a particular Amendment

provides an explicit textual source of constitutional protection against a

particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for

analyzing these claims."  *Tenenbaum*, 193 F.3d at 599 (internal quotation

marks, alterations, and citations omitted).

Here, in response to City defendants' motion, plaintiffs' attempt to cure their deficient substantive due process claim, and state that it is predicated on the allegedly unlawful removal and medical examinations of A.H. and J.H.  (Dkt. No. 196, Attach. 4 at 27.)  But these claims are more appropriately analyzed under the Fourth Amendment.  *See Tenenbaum*, 193 F.3d at 600 (finding that a substantive due process claim was inappropriate where a child's "removal and her examination constituted a seizure and search, respectively, under the Fourth Amendment," and "therefore [her claim] must be analyzed under the standard appropriate to [the Fourth Amendment], not under the rubric of substantive due process" (internal quotation marks and citation omitted)).

Accordingly, City defendants' motion for summary judgment as to plaintiffs' substantive due process claim is granted, and the claim is dismissed against all remaining defendants.

### 2.    *Equal Protection*

Defendants move for summary judgment as to plaintiffs' twenty-first cause of action, which is an equal protection claim against Joern, Stitt, Culmone-Mills, Mills, Bowers, and Negron.  (Dkt. No. 188, Attach. 1 at 24-25; Dkt. No. 189, Attach. 27 at 24-25.)  Plaintiffs bring their equal protection

65

claim under the "class of one" and "selective enforcement" theories, alleging that "Mills [and] Stitt] intentionally discriminated against plaintiffs on the basis of race, religion, and economic status"; that plaintiffs, a latchkey family,[12] were "treated differently from other latchkey families"; and that "[t]here was no rational basis for the [allegedly] disparate treatment of plaintiffs."  (Am. Compl. ¶ 169; Dkt. No. 196, Attach. 2 at 25-26; Dkt. No. 196, Attach. 4 at 28-29.)

To state a claim for selective enforcement of the law based on racial or religious identity, a plaintiff must allege "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion."  *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted).  And to succeed under a "class of one" theory, the plaintiff must demonstrate "[1] that [they have] been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment."  *Id.* (citation omitted).

---

[12]  Plaintiffs define "latchkey families" as "families that leave responsible, mature, and intelligent children home alone [for] indeterminate periods of time."  (Am. Compl. ¶ 169.)

County defendants argue that summary judgment is appropriate because "[p]laintiffs failed to allege that any actions were taken on the basis of plaintiffs' membership in any protected class" or that "other persons similarly situated were treated differently," and because County defendants had probable cause for investigating and prosecuting plaintiffs. (Dkt. No. 188, Attach. 1 at 24.)  In response, plaintiffs argue that "[]DSS [policy] expressly permits twelve year olds to babysit for as long as the parents think is reasonable," and that Hardaway and Callwood were targeted because of their race and religion.  (Dkt. No. 196, Attach. 2 at 25-26.)  Plaintiffs allege that Stitt called Callwood's religion, Unification, "a cult of orientals and moonies that traffic humans." (*Id.* at 26 (internal quotation marks omitted).)

City defendants argue that summary judgment is appropriate because there is insufficient support in the record to establish that other persons similarly situated were treated differently, that the City defendants knew which religion Callwood practiced, or that any of City defendants actions were motivated by discriminatory animus, and because there was a rational basis for every action they took with respect to this claim.  (Dkt. No. 189, Attach. 27 at 24-25.)  Plaintiffs advance similar arguments as

those they made against County defendants' motion, with the additional allegation that Mills fabricated evidence and expressed prejudice towards Hardaway's race, African-American.  (Dkt. No. 196, Attach. 4 at 28-29.)

First, aside from unsupported and conclusory allegations that plaintiffs "were singled out and victims of selective prosecution because they are African-Americans, Callwood is a Unificationist, and to punish [them] for the exercise of their constitutional rights," (Dkt. No. 196, Attach. 2 at 25; Dkt. No. 196, Attach. 4 at 29), there are no allegations of race-based or religion-based discrimination on the part of Joern, Culmone-Mills, Bowers, or Negron.  (*See generally* Am. Compl.)  Accordingly, the motions for summary judgment with respect to these defendants are granted, and the claim is dismissed against them.  *See McLoughlin*, 2019 WL 3816882, at *13 (finding that "conclusory statements" that the defendant "exhibited certain negative behavioral gestures that were condescending towards plaintiff" and that the defendant's treatment of the plaintiff was "motivated by . . . racial animus and bias" were insufficient to maintain a selective enforcement equal protection claim (citation omitted)); *see Okin*, 577 F.3d at 439 (dismissing equal protection claim on summary judgment where the plaintiff failed "to show that it was her gender, and not some other

68

characteristic, that motivated the treatment she received").

On the other hand, there are sufficient allegations against Stitt and Mills to show that they acted with discriminatory animus against plaintiffs: Stitt allegedly referred to Callwood's religion as a cult that participated in human trafficking, and Mills allegedly used a reprehensible racial slur against Hardaway.  (Dkt. No. 196, Attach. 2 at 26; Dkt. No. 196, Attach. 4 at 26, 29.)  However, the claim against Stitt and Mills fails as well, for the independent reason that plaintiffs have not identified any similarly situated individuals that were treated differently by these, or any, defendants.  *See Hu*, 927 F.3d at 101 ("To prevail under either [the selective enforcement or class-of-one] theor[ies] of Equal Protection, a plaintiff must specify at least one instance in which he was treated differently from another similarly situated.  Thus, because none of the plaintiffs' proffered comparators . . . we affirm the District Court's dismissal of that claim." (citation omitted)); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (dismissing equal protection claim, "whether pled as a selective enforcement claim or a class-of-one claim," where complaint did not "identify any comparators or similarly situated entities at all").

Accordingly, defendants motions for summary judgment as to

plaintiffs' equal protection claim are granted and the claim is dismissed against all remaining defendants.

## J.    **Conspiracy**

Defendants move for summary judgment as to plaintiffs' twentieth cause of action, which is a civil rights conspiracy claim against Joern, Meyer, Webb, Stitt, Culmone-Mills, Mills, Bowers, and Negron.  (Dkt. No. 188, Attach. 1 at 23-24; Dkt. No. 189, Attach. 27 at 23.)

To sustain a conspiracy claim under 42 U.S.C. § 1983, plaintiffs must prove the existence of "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Morris v. Martin*, No. 5:16-cv-601, 2019 WL 5457767, at *5 (N.D.N.Y. Oct. 23, 2019) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  Put differently, "a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated the plaintiff's rights . . . secured by the Constitution or federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (some internal quotation marks and citation omitted).  Accordingly, in order to maintain their

70

conspiracy claim, plaintiffs must prove an actual constitutional violation. *See Singer*, 63 F.3d at 119.

Plaintiffs' conspiracy claim as to Joern, Meyer, and Webb is based on allegations that they conspired to file "spurious" neglect and emergency removal petitions (*i.e.*, to commit abuse of process).  (Dkt. No. 196, Attach. 2 at 24.)  Because plaintiffs' abuse of process claims are dismissed by this Memorandum-Decision and Order, the conspiracy claim against these defendants is also dismissed.  *See Singer*, 63 F.3d at 119.

Next, plaintiffs' conspiracy claim against Mills, Bowers, and Negron is based on allegations that they conspired to falsely arrest and retaliate against plaintiffs.  (Dkt. No. 196, Attach. 4 at 28.)  Although plaintiffs' retaliation claims are dismissed against City defendants, the false arrest claim survives as against Mills.  However, the conspiracy claim against them is dismissed for similar reasons as those described above.  *See supra* Part IV.E.  Specifically, by plaintiffs' own admissions, Bowers and Negron were not involved in this case until they received a direction from the DAO to arrest Hardaway and Callwood.  *See id.*  Further, there are no allegations that Bowers or Negron knew that Mills fabricated evidence to the DAO.  *See id.*  Thus, it follows that these defendants could not have

agreed to falsely arrest Hardaway and Callwood.

Finally, plaintiffs' conspiracy claim as to Culmone-Mills and Stitt is based on allegations that they conspired to provide false evidence to Carnright and bring a "specious" prosecution against Hardaway and Callwood (*i.e.*, to commit malicious prosecution). (Dkt. No. 196, Attach. 2 at 24.) Although this claim is dismissed against Culmone-Mills based on prosecutorial immunity for the same reasons as described above, (*see supra* Part IV.H), it remains against Stitt, as plaintiffs have set forth sufficient evidence to defeat summary judgment that Stitt entered into an agreement with other defendants to commit malicious prosecution against plaintiffs. (Dkt. No. 196, Attach. 2 at 24.)

Accordingly, County defendants' motion for summary judgment as to plaintiffs' conspiracy claim is granted as against Joern, Meyer, Webb, and Culmone-Mills, but denied as against Stitt, and City defendants' motion for summary judgment as to this claim is granted.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that County defendants' motion for summary judgment (Dkt. No. 188) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to plaintiffs' (1) Fourth Amendment claim for
unlawful entry and search while the hotel room was vacant
(second cause of action); (2) Fourth Amendment claim for
unlawfully removing A.H. and J.H. from Hardaway's and
Callwood's custody (fifth cause of action); (3) Fourth
Amendment claim for unlawfully interviewing A.H. (sixth cause
of action); (4) claim of First Amendment retaliation on behalf of
Hardaway (ninth cause of action), as against Joern; (5) abuse
of process claims pursuant to 42 U.S.C. § 1983 (tenth,
eleventh, and twelfth causes of action); (6) claim of denial of a
right to a fair trial (fifteenth cause of action), as against
Culmone-Mills; (7) malicious prosecution claims pursuant to 42
U.S.C. § 1983 and New York state law (sixteenth and
seventeenth causes of action), as against Culmone-Mills;
(8) conspiracy claim pursuant to 42 U.S.C. § 1983 (twentieth
cause of action), as against Joern, Meyer, Webb, and
Culmone-Mills; and (9) Fourteenth Amendment equal protection
claim (twenty-first cause of action), which claims are
**DISMISSED**; and

73

**DENIED** in all other respects; and it is further

**ORDERED** that City defendants' motion for summary judgment (Dkt.

No. 189) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to plaintiffs' (1) Fourth Amendment claim for

unlawful entry and search while the hotel room was vacant

(second cause of action), as against Strand; (2) Fourth

Amendment claim for unlawfully removing A.H. and J.H. from

Hardaway's and Callwood's custody (fifth cause of action), as

against Sommer; (3) Fourth Amendment claim for unlawfully

interviewing A.H. (sixth cause of action), as against Strand and

Sommer; (4) First Amendment retaliation claims (eighth and

ninth causes of action); (5) abuse of process claims pursuant to

42 U.S.C. § 1983 (tenth, eleventh, and twelfth causes of

action); (6) false arrest/false imprisonment claim pursuant to 42

U.S.C. § 1983 (thirteenth cause of action), as against Bowers,

Negron, and Strand; (7) claim of denial of a right to a fair trial

(fifteenth cause of action), as against Bowers and Negron;

(8) Fourteenth Amendment substantive due process claim

(eighteenth cause of action); (9) municipal liability claim

(nineteenth cause of action); (10) conspiracy claim pursuant to

42 U.S.C. § 1983 (twentieth cause of action); and

(11) Fourteenth Amendment equal protection claim (twenty-first

cause of action), which claims are **DISMISSED**; and

**DENIED** in all other respects; and it is further

**ORDERED** that plaintiffs' cross-motion for summary judgment (Dkt.

No. 196) is **DENIED**; and it is further

**ORDERED** that the following claims remain: (1) a Fourth Amendment

claim for unlawful entry and search of the hotel room while A.H. and J.H.

were present (first cause of action), against Mills and Farrell; (2) a Fourth

Amendment claim for unlawful entry and search while the hotel room was

vacant (second cause of action), against Mills and Farrell; (3) a false

imprisonment claim pursuant to 42 U.S.C. § 1983 (third cause of action),

against Mills, Farrell, Strand, Sommer, Meyer, and Timbrouck; (4) a Fourth

Amendment claim for unlawfully removing A.H. and J.H. from Hardaway's

and Callwood's custody (fifth cause of action), against Mills, Farrell, and

Strand; (5) Fourth Amendment claims for unlawful medical examination of

A.H. and J.H. in the hotel room and the hospital (fourth and seventh causes

of action), against Mills, Farrell, Strand, and Sommer; (6) a Fourth

75

Amendment claim for unlawfully interviewing A.H. (sixth cause of action), against Mills and Farrell; (7) a claim of First Amendment retaliation on behalf of Hardaway (ninth cause of action), against Stitt; (8) a false arrest/false imprisonment claim pursuant to 42 U.S.C. § 1983, against Mills; (9) an Eighth Amendment deliberate indifference to serious medical needs claim (fourteenth cause of action), against Mills, Bowers, Negron, and Strand; (10) a claim of denial of a right to a fair trial (fifteenth cause of action), against Mills and Stitt; (11) malicious prosecution claims pursuant to 42 U.S.C. § 1983 and New York state law (sixteenth and seventeenth causes of action), against Mills, Bowers, Negron, and Stitt; and (12) a conspiracy claim pursuant to 42 U.S.C. § 1983 (twentieth cause of action), against Stitt; and it is further

   **ORDERED** that the Clerk shall terminate the City, the County, Joern, Greene, Webb, and Culmone-Mills as defendants; and it is further

   **ORDERED** that this action is deemed trial ready and a scheduling order shall be issued in due course; and it is further

   **ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 1, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge